A. McElroy et al. v. Silas Phink, Administrator.

No. 1251. Decided November 23, 1903.

**1.—Wiil—Revocation—Sufficiency' of Evidence.**

Facts considered under which it is held that there was evidence to sup-port a finding that a will, proved to have been executed, but not found, had not been revoked. (P. 154.)

**2.—Same—Presumptions.**

The presumption that a will last seen in the custody of the testator has been revoked, if it can not be found, does not apply where it was last shown in the possession of one whose interest was adverse to its preservation. (Pp. 154.)

**3.—Same—Statute.**

The presumptions as to revocation or absence of revocation, in case of a lost will, are not altered by the statute (Rev. Stats., art. 1904, par. 5) re-quiring evidence that it has not been revoked. (Pp. 154, 155.)

**4.—Will—Revocation—Declarations of Testator.**

On the issue of revocation of a lost will, last shown to be in the hands of the husband of testatrix who had called on the custodian for it, declara-tions of the testatrix that she had herself sent for and destroyed it were ad-missible in evidence; so, also, were her declarations complaining of her treatment by the principal beneficiary under the will. (Pp. 155-158.)

**5.—Same.**

Declarations of testatrix in regard to destruction or revocation of an earlier will in favor of the same legatee were not admissible to show revocation of a later one, executed but not found, sought to be probated.   (Pp. 158, 159.)

**6.—Same—Hearsay.**

Declarations of the deceased husband of testatrix as to her destroying the will sought to be proven were not admissible on the issue of its revocation.   (P. 159.)

**7.—Evidence.**

Proof that the legatee seeking the admission to probate of a lost will of testatrix had access to her papers and opportunity to destroy it was irrelevant.   (P. 159.)

**8.—Evidence—Character Not in Issue.**

On the issue of revocation of a lost will, last shown to have been in the possession of the husband of testatrix, evidence of his character for integrity was not admissible to rebut suspicion or presumption that he might himself have destroyed it.   (P. 159.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Grayson County.

This was a proceeding instituted in the probate court by the plaintiffs in error, as heirs at law, contesting the probate of a will of Mariah F. McElroy, deceased, alleged to be lost. That court admitted the will to probate. Appealed to the District Court the same judgment on trial de novo was entered, and this was affirmed on appeal to the Court of Civil Appeals.

*Smith, Templeton & Tolbert,* for plaintiffs in error.—Where an alleged will which is not produced in court is sought to be probated, the proponent must show by legal and competent evidence not only that the alleged testator executed the will proposed for probate with the formalities and solemnities and under the circumstances required by law to make it a valid will, but he must go further and show affirmatively that such will has not been revoked by the testator. The evidence in this case was and is wholly insufficient to establish such fact. Rev. Stats., art. 1904, subdiv. 5; McIntosh v. Moore, 22 Texas Civ. App., 22; Tynan v. Paschal, 27 Texas, 286, 295, 296; Collyer v. Collyer, 110 N. Y., 481; Behrens v. Behrens, 47 Ohio St., 323, 21 Am. St. Rep., 820, 823-827, and authorities cited; Betts v. Jackson, 6 Wend., 181; note to Graham v. Burch, 28 Am. St. Rep., 347, 348.

One seeking to establish a lost or destroyed will has the burden of proving that the will was not destroyed by the testator with the intent to revoke it. In this case the proponent did not discharge such burden and the trial court erred in admitting the alleged will to probate. See authorities above cited; also, Tynan v. Paschal, 27 Texas, 295, 296; Collyer v. Collyer, 110 N. Y., 481; Behrens v. Behrens, 47 Ohio St., 323.

If a will which, when last seen, is shown to have been in the possession of the alleged testator or where he had free access to it, can not be found after such testator's death, the presumption is that he destroyed it for the purpose of revocation, and the burden is upon the propounders to overthrow this presumption. In this case there was no

evidence to overcome such presumption, and the alleged will should have been denied probation. See authorities above cited, and see note to Tynan v. Paschal, 84 Am. Dec., p. 629 (27 Texas, 295), and authorities therein cited.

The alleged will having been traced to the possession of Sam McElroy, the husband of the alleged testator, his possession, under the facts of this case, will be deemed to be her possession, and no presumption will be indulged that she did not have free access to it. Brown v. Brown, 61 Texas, 56, 58, 59; Richardson v. Hutchins, 68 Texas, 81, 87; Speer's Law of Marr. Wom., sec. 82.

The husband is by law made the agent of the wife, and as such agent his possession of all her papers relative to her property will be deemed equivalent to her possession. Brown v. Brown, 61 Texas, 56, 58, 59; Richardson v. Hutchins, 68 Texas, 81, 87; Speer's Law of Marr. Wom., secs. 82, 36, 40; Coleman v. First Nat. Bank of Waxahachie, 17 Texas Civ. App., 132.

No presumption will be indulged that Sam McElroy, in whose possession the alleged lost will was last seen, fraudulently obtained, secreted or destroyed same, or that he did not deliver it into his wife's custody. Lawson on Presump. Ev., rule 19, p. 93, and subrule 1, p. 439; Collyer v. Collyer, 110 N. Y., 481; Speer's Law of Marr. Wom., sec. 40.

The fact that Sam McElroy may have been interested in establishing the intestacy of his wife will not authorize or support the presumption that he fraudulently obtained, destroyed or secreted his wife's will, but such facts must be affirmatively established by the proponent by legal and competent evidence. McIntosh v. Moore, 22 Texas Civ. App., 22; In re Burns' Estate, 21 Texas Civ. App., 512; Collyer v. Collyer, 110 N. Y., 481.

The court erred in refusing to permit respondents to prove the declarations and statements of Mrs. Mariah F. McElroy made to and in the presence of F. C. Vaden, J. W. Vaden and Mrs. J. W. Vaden on the day before she started to Fort Worth to be operated on, to the effect that she had sent and gotten her will and that she had destroyed it; that she had burned it up; and that she had decided not to leave her property to Silas Phink; that she was dissatisfied with the way he was conducting himself. That he had run through with all the property which he had gotten from the Vaden estate, etc. The statements and declarations of Mrs. McElroy were admissible for the purpose of showing that she knew that her husband, Sam McElroy, had gotten her will from H. O. Hannah, and that it had been thus placed in her possession or under her control and that she had free access to it. Johnson v. Brown, 51 Texas, 78-80; Behrens v. Behrens, 47 Ohio St., 323, 21 Am. St. Rep., 820, 823-827, and authorities there cited. See, also, authorities cited below under succeeding propositions under this assignment.

The proposed evidence was admissible for the purpose of showing that Sam McElroy's action in applying for and obtaining possession of

his wife's will was known to and acquiesced in by her and that same was thus obtained by him with her consent. And further for the purpose of rebutting any presumption that might otherwise be indulged that he obtained said will surreptitiously, and that he had fraudulently destroyed or secreted same without her knowledge or consent.

The proposed evidence was admissible as a part of the res gestae of the act of Sam McElroy in obtaining from H. O. Hannah his wife's will, which act was proven by proponent by the testimony of said Hannah. Wallace v. Byers, 14 Texas Civ. App., 574; McGowen v. McGowen, 52 Texas, 663, 664; Hanna v. Hanna, 3 Texas Civ. App., 52, 53; International & G. N. Ry. Co. v. Anderson, 82 Texas, 518, 519; Wright v. Solomon, 46 S. W. Rep., 59.

The statements and declarations of Mrs. McElroy were admissible as original evidence tending to prove the destruction and cancellation by her of the alleged will, and as tending to support the presumption arising from the nonproduction of said will that she had revoked same. Johnson v. Brown, 51 Texas, 78-80; Behrens v. Behrens, 47 Ohio St., 328, 21 Am. St. Rep., 820, 823-827, and authorities there cited; Collagan v. Burns, 57 Me., 465; Lawyer v. Smith, 8 Mich., 412 (77 Am. Dec., 460); Patterson v. Hickey, 32 Ga., 156; Harring v. Allen, 25 Mich., 505; Pickens v. Davis, 134 Mass., 252, 45 Am. Rep., 326. See note to this decision, p. 342, 343, where this subject is exhaustively discussed and the authorities thereon are collated.

This proposed testimony was admissible as tending to show the state of Mrs. McElroy's feeling at that time toward proponent, and as tending to support and strengthen the presumption arising from the nonproduction of said will that she had in her lifetime revoked same by destroying it. Johnson v. Brown, 51 Texas, 78-80; Robinson v. Stuart, 73 Texas, 270; Weeks v. McBeth, 14 Ala., 474; Higgins v. Johnson, 20 Texas, 389; Note to Graham v. Burch, 28 Am. St. Rep., 361, 362, where this character of evidence is discussed and authorities are cited.

The trial court erred in refusing to permit respondents to prove by F. C. Vaden and other witnesses that Mrs. Mariah F. McElroy, while she was sick and helpless at Silas Phink's residence in Sherman shortly before she went to Fort Worth, complained of Mr. Phink and his wife having left her in that condition and of their going off on a pleasure trip while she was so sick, and that ill feeling on her part was thus engendered toward him because of his neglect of her. Johnson v. Brown, 51 Texas, 78-80.

The trial court erred in refusing to permit respondents to prove by Mrs. Wilkins that some seven or eight years before Mrs. McElroy's death she told said witness that she had made a will giving all her property to Silas Phink, but that he got so wild and reckless that she called him up and showed him the will and then burned it. That she told him when she did so that she and his uncle Sam had made a will leaving everything to him, but that he had got so wild they could not

afford to give him the property, and that she burnt the will up before him. Same authorities.

The court erred in refusing to permit respondents to prove by the witness Jennings that a few years before Mrs. McElroy's death she told him she made a will leaving her property to Silas Phink, but that he was wild and reckless and that she destroyed said will, and that she and her husband, Sam McElroy, could not afford to leave him their property. Same authorities.

Proponent having put in evidence as part of his case, the act of Sam McElroy in going after and obtaining possession of his wife's will, the declaration of said McElroy made in explanation of said act and declaratory of his purpose and object in doing same were admissible as part of the res gestae thereof, and the trial court erred in excluding the proposed evidence. Wallace v. Byers Bros., 14 Texas Civ. App., 574; Wright v. Solomon, 46 S. W. Rep., 59; McGowen v. McGowen, 52 Texas, 663, 664; Hanna v. Hanna, 3 Texas Civ. App., 52, 53.

The death of Sam McElroy having been shown, his declarations to the effect that his wife had destroyed her will by tearing it in two and putting the fragments in the stove were admissible for the purpose of showing that he, in his lifetime, disclaimed having possession of said will, and for the purpose of repelling the charge made against him by proponent that he had said will and was refusing to produce it for probate.

The trial court erred in refusing to permit respondents to prove by Mrs. Jennie McElroy that she heard her husband, Sam McElroy, during his lifetime, speak of his former wife having made a will, and that he said she made a will; that she sent him to get it, and that he got it and gave it to her; that she tore it in two and put it in the stove and burned it up in Silas Phink's house, etc.

The trial court erred in refusing to permit respondents to prove that during a portion of the time that Mrs. McElroy was so sick at Silas Phink's house, he (Phink) was there and that he had an opportunity to obtain possession of and inspect her papers. This proposed evidence was admissible for the purpose of showing that proponent had as good an opportunity to obtain possession of the alleged will as did anyone else. Stone v. Moore, 48 S. W. Rep., 1097.

The charge made by proponent against Sam McElroy, to the effect that he had obtained and held possession of his wife's will, and refused to produce it for probate when called on so to do, was tantamount to a charge against him of fraudulently destroying or suppressing said will, and when such a charge was made, evidence of his general reputation and character for honesty, integrity, etc., was admissible to rebut such charge. 1 Greenl. on Ev., sec. 54; Largent v. Beard, 53 S. W. Rep., 91.

*Wolfe, Hare & Semple,* for defendant in error.—Appellee cedes that the burden was upon him to show that the will proposed for pro-

bate had never been revoked, but denies that the evidence was insufficient to warrant the finding of the court on this issue.

Where the evidence shows that the will is intrusted to the care of a person other than the testator, or where the possession is traced to such other person, no presumption of revocation arises from the fact that at the death of the testator the will can not be found among his papers.

Where the wife makes a will disposing of her property, to which her husband under the law would have succeeded as heir had the will not been executed, he would not be the legal custodian of said will, and the fact that the evidence in this case shows that Sam McElroy got said will from the possession of the person to whom his wife had intrusted it raises no presumption of agency, nor would his possession be equivalent to her possession.

There being no issue in this case as to the want of mental capacity in testatrix or of undue influence in procuring the execution of the will, all declarations by her made at a time too remote to constitute a part of the res gestae are inadmissible because irrelevant and immaterial and because hearsay and self-serving. Kennedy v. Upshaw, 64 Texas, 411; McIntosh v. Moore, 22 Texas Civ. App., 22; Johnson v. Brown, 51 Texas, 78; Throckmorton v. Holt, 180 U. S., 552; Waterman v. Whitney, 11 N. Y., 157; Dan v. Brown, 4 Cow., 483; Hoitt v. Hoitt, 63 N. H., 475; Lane v. Hill, 68 N. H., 275; Caeman v. Van Harke, 33 Kan., 333; Gay v. Gay, 60 Iowa, 415; Lewis v. Lewis, 2 Watts & S., 455; Randall v. Beatty, 31 N. J. Eq., 643; Staines v. Stewart, 2 Swab. & T., 320; Walton v. Kendrick, 122 Mo., 505; Gibson v. Gibson, 24 Mo., 234.

There was no error in excluding the testimony of the witness Vaden as to what was said to him by Sam McElroy, because the fact that he went after the will was undisputed, and his statement that his wife sent him after the will and that she was going to destroy it was irrelevant, immaterial, hearsay and self-serving.

The evidence of Mrs. Jennie McElroy as to the declarations of Sam McElroy to the effect that his wife had sent him after the will and that she had torn it up and put it in the stove, etc., were properly excluded as irrelevant, immaterial, hearsay and self-serving. For aught that is shown in the record this declaration may have been made after the application to probate the will had been filed.

The fact that appellee had an opportunity to get possession of and inspect Mrs. McElroy's papers at the time she was sick was irrelevant and immaterial to any issue in the case.

Evidence as to the general reputation of Sam McElroy for honesty, integrity, etc., was properly excluded as irrelevant and immaterial, even if it had been charged that he destroyed the will. Jackson v. Martin, 41 S. W. Rep., 837; Landa v. Obert, 5 Texas Civ. App., 620; Best on Ev., sec. 262, note 1; 1 Greenl. on Ev., sec. 54.

The act relied upon to show destruction or cancellation of the will

can not be proven by the declarations of the testator. Patterson v. Lamb, 21 Texas Civ. App., 512; Kennedy v. Upshaw, 64 Texas, 411; Throckmorton v. Holt, 180 U. S., 552; Coghill v. Kennedy, 119 Ala., 641; Leslie v. McMurtry, 60 Ark., 301; Comstock v. Hadlyme, 8 Conn., 265; Hoitt v. Hoitt, 63 N. H., 499; Jones v. McLellan, 76 Me., 49; Jackson v. Kniffin, 2 Johns., 31; Waterman v. Whitney, 11 N. Y., 162; Matter of Kennedy, 167 N. Y., 163; Hayes v. West, 37 Ind., 21; Bennett v. Sherrod, 3 Ired. (N. C.), 303; Tucker v. Whitehead, 59 Miss., 594; Lane v. Moore, 151 Mass., 90; Kaufman v. Coughman, 49 S. C., 159; Gay v. Gay, 60 Iowa, 415; Mallery v. Young, 94 Ga., 804; Herster v. Herster, 122 Pa. St., 239; Caeman v. Van Harke, 33 Kan., 338; Mooney v. Olsen, 22 Kan., 77; In re Valentine's Will, 93 Wis., 54; Will of Ladd, 60 Wis., 187; Gibson v. Gibson, 24 Mo., 227; Rule v. Maupin, 84 Mo., 587; Bush v. Bush, 87 Mo., 480; Doherty v. Gilmore, 136 Mo., 414; Robinson v. Hutchinson, 26 Vt., 38; Couch v. Eastham, 27 W. Va., 796; Thompson v. Updegraff, 3 W. Va., 637; Meddleditch v. Williams, 45 N. J. Eq., 726; Randall v. Beatty, 31 N. J. Eq., 643; Hoitt v. Hoitt, 63 N. H., 475; Lane v. Hill, 68 N. H., 398; Stains v. Stewart, 2 Swab. & T., 320; Provis v. Reed, 5 Bing., 435.

GAINES, CHIEF JUSTICE.—This proceeding was instituted in the probate court of Grayson County by defendant in error to probate a will of Mariah F. McElroy, deceased, which was alleged to have been lost. The probate was contested by the plaintiffs in error as heirs at law of the deceased. That court admitted the will to probate. The case was appealed to the District Court, where upon a trial de novo the same judgment was entered. Upon appeal to the Court of Civil Appeals the judgment of the District Court was affirmed.

The will was not produced, but there was sufficient evidence introduced by the proponent of the will to establish its execution and contents and that it could not be found. The only question presented in this court as to the correctness of the ruling of the trial court upon those issues is as to the sufficiency of the evidence to show that the will had not been revoked.

The two subscribing witnesses testified to the execution and contents of the will, and one of them also testified, that immediately after the will was executed, which took place some time in the summer of 1900, the testatrix placed it in his custody and asked him to keep it; and that some time thereafter, Sam McElroy, the husband of the testatrix, came to him and said to him, "I came after that will." The witness was not sure whether he said, "I want it" or "My wife wants it." He further testified that thereupon he delivered the will to McElroy. This so far as the testimony shows was the last that was seen of the will. The delivery of the will to McElroy, the husband, seems but a short time before the testatrix went to Fort Worth to undergo an operation and but a short time before her death. Sam McElroy also died before the

trial of the case, without his deposition having been taken by either party.

The case was tried before the judge without a jury, and the first error assigned in the Court of Civil Appeals and in this court is to the effect that the trial court erred in holding that there was sufficient evidence to authorize a finding that the will had not been revoked.

The authorities are practically in accord upon the proposition that where a will which when last seen was in the custody of the testator can not be found after his death a presumption arises that it has been revoked. The proposition is evidently based upon the theory that it is a reasonable inference from the facts that the custodian, who in such case is the testator, has destroyed it for the purpose of revoking it. On the other hand, there is authority for holding that when at last accounts the will was in the hands of some one other than the testator—and especially in the possession of one to whose interest its provisions are adverse—the presumption of its destruction by the testator does not arise from the mere fact that it can not be produced. It may be that if the will is shown to have been destroyed, it would not be presumed that it was the act of some one other than the testator, for the reason, as given by the English courts, that it would not be presumed that the custodian had committed a crime. But in this case the testimony traces the will, when last seen, into the possession of the husband of the testatrix, and it also appears therefrom that by the instrument all her property was devised to the proponent and that the husband was an heir to her estate. It does not show that the will was destroyed. It is merely shown that it could not be found. It may be that it has been lost. While it may not be permissible to infer that the husband had destroyed it, there is room for the presumption that he may have lost it. It is no offense against the law to lose an instrument in writing, and therefore it is not necessary to determine, in this case, whether to destroy the will of another without authority to do so is under our law, where all penal offenses are defined by statute, a criminal act or not. Therefore we think, that under the evidence adduced in this case, according to the rule generally recognized by the courts, the trial judge was at least authorized to find, as he did find, that the will had not been revoked.

But it is argued on behalf of the plaintiffs in error that article 1904 of our Revised Statutes makes a different rule. That article reads as follows:

"Art. 1904. Before admitting a will to probate it must be proved to the satisfaction of the court—

"1. That the testator, at the time of executing the will, was at least twenty-one years of age, or was married, that he was of sound mind, and that he is dead.

"2. That the court has jurisdiction of his estate.

"3. That citation has been served and returned in the manner and for the length of time required by law.

"4. That the testator executed the will with the formalities and

solemnities and under the circumstances required by law to make it a valid will.

"5.  That such will has not been revoked by the testator."

In order to construe the fifth subdivision of the article let us take the case of a will which has been produced without mutilation or other evidence of an intent to revoke it and the execution of which has been duly proved.  Does the statute make it incumbent upon the proponent in such a case to go further and offer additional evidence to prove the negative, namely, that it has not been revoked in any of the methods provided by law?  We think not.  The will having been established as having been duly executed by the testator, and having been produced, unattended by any circumstances which cast suspicion upon it, the presumption of the continuity of the status applies and makes a prima facie case as against a revocation.  So when the will can not be produced, but its execution and contents are proved, and it is shown that when last seen it was in the custody of the testator, the presumption being that he has destroyed it with intent to revoke it, the presumption of continuity is rebutted and in the absence of some other evidence the proponent must fail in his case.  But no such presumption of revocation arising from the failure to produce the will when it has been traced to the hands of another than the testator and can not be found, the first presumption should prevail and the evidence should be held sufficient at least to warrant a finding that the will had not been revoked.  .

We think the Court of Civil Appeals were correct in overruling the first assignment of error.

During the progress of the trial the contestant offered to prove by F. C. Vaden, "that on the day before Mrs. McElroy left Sherman to go to Fort Worth to have an operation performed, he had a conversation with her in which she told him that she had sent and gotten her will and that she had destroyed it, that she had burnt it up, and that she had decided not to leave her property to Silas Phink; that she was dissatisfied with the way he had treated her and with the way he was conducting himself. That she told him that Silas Phink had run through with all the property which he had gotten from the Vaden estate, and if she and her husband were to leave him their property he would run through with it the same way.  That this conversation occurred with Mrs. McElroy while she was sick at Silas Phink's house on the day before she left to go to Fort Worth."  Counsel for the proponent objected to the testimony on the ground, "that it was irrelevant, immaterial, hearsay and self-serving."  The objection was sustained by the court and exception duly taken by the contestants.  The ruling of the court was assigned as error in the Court of Civil Appeals and is also assigned in this court.  This presents the most difficult question in the case.

After an examination of the authorities bearing upon this question, we are impressed with the truth of the following remarks found in the opinion of the court in the case of Tucker v. Whitehead, 59 Miss., 594: "There are few questions in the law upon which authorities are more

hopelessly in conflict than upon the admissibility of the declarations of a deceased testator in support or in rebuttal of a supposed revocation of a testamentary paper. It has engaged the attention and elicited the logic of the greatest jurists who have adorned the bench of this or any country. Against the admissibility of such evidence are to be found the names of Kent and Story and Livingston, and in favor of it those of Walworth and Ruffin and Lumkin and Cooley. Certainly we can hope to add nothing to the strength of an argument, on either side, which has already been exhausted by such men as these."

It seems, however, to be universally held, that the declarations of a testator are admissible in evidence upon the issue of his insanity. Since, however, the words and conversation of a party indicative of mental aberration are always admissible upon the question of the soundness of his mind, when that question is in issue, it does not follow for that reason that they are admissible for any other purpose. They in such cases tend merely to show the mental capacity of the testator and are by all the courts held admissible for that purpose. But beyond this, there is not only a contrariety but also a great variety of opinions—some authorities holding that declarations of the testator are not admissible upon any other issue—while others hold that they are admisible upon some and not upon others. This is illustrated by the decisions of our own courts to which we shall hereinafter refer. By reason of the hopeless confusion in the decided cases upon the question, it would be a profitless task to review them in this opinion. They are ably discussed in the case of Collagan v. Burns, 59 Me., 449, and in that of Throckmorton v. Holt, 180 U. S., 552. In the former the court, consisting of eight judges, were equally divided, which under the statute of the State resulted in an affirmance of the ruling of the trial judge, who held that in that case the testator's declarations made while pasting the parts of a torn will together and while reading it after it was so put together, to the effect that it had been torn by his mother, and also his declarations of good will and affection for his wife, the principal legatee, were admissible upon the question of revocation. In Throckmorton v. Holt, in the trial court the declarations of the alleged testator were admitted upon the issue of forgery. This was held error by five ·of the justices of the Supreme Court. Three dissented from the conclusion upon that point, and another (Mr. Justice Brown) announced merely his concurrence in the result. There was another error which called for a reversal of the judgment as held by the majority, so that we are left in doubt whether Judge Brown concurred with the majority or the minority upon the question of the admissibility of the declarations. The question has never, so far as we are aware, been decided in the House of Lords in England. But in the case of Sugden v. Lord St. Leonards (Law Rep., 1 Prob. Div., 154) the Court of Appeal held that the declarations of the testator made either before or after the execution of a will were admissible to prove its contents, the will being lost. One of the four judges dissented as to the proposition that declarations subsequent to the execution were compe-

tent. But in the subsequent case in the House of Lords of Woodward v. Goulstone (Law Rep., 11 App. Cas., 469) each of the three law lords who delivered opinions in the case expressly declined to pass upon the ruling in Sugden v. St. Leonards, that question not being directly involved in that case.

But as we have previously intimated, we are not without authority in our own court. In Tynan v. Paschal, 27 Texas, 286, which was the case of an alleged will which had been lost, the court say: "The statute requires two witnesses to the handwriting of the subscribing witnesses. Here there was but one witness to the handwriting of one subscribing witness; and although the declarations of the supposed testator were properly received to rebut the presumption of a cancellation, or revocation, of the will, which arises from its loss or destruction previous to his death, and they might also be regarded by the jury as tending, in some degree, to strengthen the other proof as to the execution of the will, yet they were not, of themselves, sufficient proof of it, or even to fully supply the deficiencies in the other proof." But it is urged, that the remarks concerning the admissibility of the testimony as to the declarations of the testator in that case are mere dicta and therefore not authority. It is true, that, so far as we can gather from the opinion and the briefs, the evidence was admitted without objection. But the court charged the jury that the alleged testator's "statements * * * were not legal evidence of the execution of the will; but were admissible as tending to corroborate the evidence of its execution and to destroy the presumption of its cancellation;" and from the brief of counsel for appellant, the charge seems to have been assigned as error. At all events, the judgment was reversed and the cause remanded for a new trial; which implies that the cause was to be again tried in accordance with the views expressed in the opinion of the appellate court. The court which decided that case consisted of Chief Justice Roberts and Associate Justices Bell and Moore; and it is not believed that that able court announced their conclusion upon that question without careful consideration. If declarations which tend to prove that a will has not been revoked are competent evidence, it seems to us that declarations which tend to show its revocation are also admissible for the same reason.

In Johnson v. Brown, 51 Texas, 65, in which the will was contested on the ground that it was a forgery, testimony on behalf of the contestants of declarations of the alleged testator showing hostility on his part towards the legatees in the will was admitted, and it was held that the court did not err in admitting it.

On the other hand, in Kennedy v. Upshaw, 64 Texas, 411, it was held, on a contest as to a codicil alleged to be forged, that the declarations of the testator made after the date of the alleged codicil, to the effect that he had not changed his will, were not admissible. It is to be observed that although the opinion of Judge Stayton in that case shows great research, it makes no allusion to either the case of Johnson v. Brown, supra, in the decision of which he participated and concurred, or to that

of Tynan v. Paschal, above cited. It is evidence that the court did not intend to overrule the previous decision in either case.

When the declarations of an alleged testator consist in effect of the naked assertion that he has made a will, or that he has revoked one that is proved to have been executed, they are generally excluded; and we think such action is proper for the reason that such declarations are merely statements of a legal conclusion and not a statement of the facts from which that conclusion should be deduced. But where a will duly executed can not be produced, and its last custodian has been some person other than the testator, his declarations that he had destroyed the will for the purpose of revoking it stand upon a different ground. Two reasons are urged against the admissibility of such testimony: first, that it consists of mere declarations of one not a party to the suit and is therefore hearsay; and the second is that it opens a door to fraud and forgery. As to the latter, it is sufficient to say that we deem it of very little weight because, as we think, the same may be said of much other parol testimony the admission of which is never questioned. As to the first ground, the general rule is that the declarations of third parties are not competent evidence. But conceding, for the sake of the argument, that the declarations of a testator are properly classed as declarations of a third party, the question presents itself, whether they ought not to be considered as standing upon a different basis and to be treated as an exception. Exceptions are made in other cases as to the declarations of deceased persons. For example, declarations as to pedigree and declarations made in the usual course of business by persons who have since died are admitted. The position of the testator is very different from that of an ordinary third person whose declarations may be offered in support of an issue upon the trial of a case. Both the proponent of the will and the contestant claim under him. As a very general rule he best knows the facts about which he makes the statement. His will is ambulatory and subject to be changed or revoked. No one has any right under it until his death. He has a right to make such disposition of his property as he may wish, and as a rule he has no interest to induce him to make a false statement about the matter.

The testimony which was offered and rejected in this case and which we are now considering strikingly illustrates the views we have just expressed. It tended to show, that what McElroy said to Hanna, when he went for the will, was "My wife wants it;" and that the testatrix had changed her mind and had got the will into her possession, and had destroyed it for the purpose of revoking it. We are of the opinion that the introduction of such testimony is not forbidden by sound policy and that it violates no rule of law. We conclude that the court erred in excluding the evidence.

It follows, we think, that the trial court also erred in excluding testimony offered to prove that shortly before her death the testatrix complained of the treatment of the proponent and his wife towards her.

We also think, however, that the testimony of Mrs. Wilkins as to

statements made by the testatrix seven or eight years before her death were properly excluded. We are of the same opinion as to the rejected testimony of Jennings, a witness for contestants.

Neither do we think there was error in excluding the testimony of F. C. Vaden as to remarks to him by Sam McElroy—presumably when he was going to Hanna's home for the will. This was clearly hearsay. The same may be said as to the testimony of Mrs. Jennie McElroy (who after the death of the testatrix intermarried with Sam McElroy) as to the latter's declarations to her.

Nor do we think the court erred in refusing to admit evidence to show that during a portion of the time Mrs. McElroy, the testatrix, was sick at proponent's house he had access to her papers. The materiality of this testimony is not apparent to us.

We are also of the opinion that the trial court correctly excluded the testimony of J. D. Woods and others as to the character of Sam McElroy for honesty and integrity. In Redus v. Burnett, 59 Texas, 576, the question was decided adversely to the contention of appellants.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

In the opinion in this case it is erroneously stated that Judge Stayton participated and concurred in the decision of the case of Johnson v. Brown, 51 Texas, 65. That was an error, as has been pointed out in the argument upon this motion, and we take occasion to correct it. He was not a member of the court when that case was decided. In Kennedy v. Upshaw, 64 Texas, 411, Judge Stayton did cite Johnson v. Brown, but did not discuss it.

But we still think our conclusions as expressed in the opinion in this case correct, and therefore the motion for a rehearing is overruled.

*Overruled.*

Opinion delivered January 14, 1904.