## DAVIS et al. v. ROACH et al.

### No. 8896.

Court of Civil Appeals of Texas. Austin.

Feb. 21, 1940.

Rehearing Denied March 20, 1940.

Walker & Hammett, of Lampasas, and Stinson, Hair, Brooks & Duke, of Abilene, for appellants.

Cox & Hayden, of Abilene, for appellees John Roach et. al.

J. Tom Higgins, of Lampasas, and A. R. Eidson, of Hamilton, for appellees Violet Roach and J. L. Buttrell.

BLAIR, Justice.

Appellant Mrs. Mattie Pearl Davis made application under the terms of Art. 3349, Rev.St. to probate the written will of Patrick J. Roach, deceased, alleging that it had been lost or destroyed but not revoked; that it made certain disposition of the property of testator; and that proponent was a beneficiary and named executrix of the will. Appellees, the heirs at law of testator, including his widow, contested the application; and after a hearing the will was admitted to probate. Contestants appealed to the district court, where at the conclusion of proponent's evidence, the court instructed a verdict for contestants, and accordingly rendered judgment denying the will to probate; hence this appeal.

The trial court interpreted the evidence as showing that the will was in the possession or accessible to the testator at all times prior to his death and could not be found by diligent search after his death; and held that the presumption of law obtained that the testator had himself destroyed the will during his lifetime, with intent to revoke it; and that proponent failed to rebut this presumption by competent evidence. This rule of law is settled in this state. McElroy v. Phink, 97 Tex. 147, 76 S.W. 753; Aschenbeck v. Aschenbeck, Tex.Civ.App., 62 S.W.2d 326.

With the rule proponent does not disagree, but contends that the evidence adduced and other evidence offered, but erroneously excluded by the trial court, were sufficient, if believed by the jury, to rebut

the presumption of destruction of the will by the testator with intent to revoke it. We do not sustain this contention.

■ An attorney, J. C. Abney, testified that he drew a will for Patrick J. Roach about September, 1927, which Roach executed in the manner required by law. Witness and his father, W. B. Abney, signed the will as attesting witnesses, and it was then delivered to Roach, and witness never saw it thereafter. Witness also testified to his recollection of the contents of the will.

W. W. Tippen, who at the time operated a national bank at Lometa, Texas, and with which bank Roach did business, testified in substance that about the year 1927 Roach brought his will to the bank and requested him to read it and to make some explanations of its provisions, which he did. Roach kept some private papers in a green metal box in the vault of the bank used by its customers for keeping private papers. After reading the will Roach requested witness to place it in the green box, which he did. The box had a lock on it, and witness kept one key to it in his desk at the bank and Roach kept another key. Roach could have obtained the box at any time by requesting witness or any employe of the bank to get it for him. The bank failed in the year 1931, at which time witness left the bank, and its affairs were turned over to a receiver. Witness testified that the box in which he placed the will was left in the vault, and was there when he turned the bank's affairs over to the receiver, and witness never saw the will after he placed it in the box. Witness also testified to his recollection of the contents of the will, which differed in some respects from the contents testified to by the attorney who drew the will; but there can be no question that the will which these two witnesses described was the same will. No other witness ever saw the will. By it proponent was made executrix and was left a large portion of the estate of testator. A diligent search was made for the will after the death of testator by his brothers and the husband of proponent, but it was not found. A dark green metal box was found by them at a merchandise store in Lometa, which they receipted for as a locked box belonging to testator. It contained other papers of testator, but not his will.

These facts adduced by proponent bring the case clearly within the rule stated, and standing alone and unexplained require and sustain the conclusion of the trial court that the alleged lost or destroyed will was not admissible to probate. McElroy v. Phink, supra; Aschenbeck v. Aschenbeck, supra; Clover v. Clover, Tex.Civ.App., 224 S.W. 916, 920; Buchanan v. Rollings, Tex.Civ.App., 112 S.W. 785; Rape v. Cochran, Tex.Civ.App., 217 S.W. 250; and Shepherd v. Stearns, Tex.Civ.App., 45 S. W.2d 246.

But proponent contends that the presumption of revocation from the facts of disappearance of the will and the possession or control thereover by the testator does not arise or is rebutted in the instant case because the evidence showed that the will was in the possession of a person other than the testator prior to his death. This contention is predicated upon the facts that testator left the will in his locked box in the vault of the bank and left a key thereto with Tippen at the time he was in charge of the bank. This contention assumes, contrary to the evidence, that the will was last in the possession of Tippen, or later the receiver. The will was in the locked box of the testator, which was deposited in the vault of the bank used by its customers for that purpose, and all testator had to do to get actual physical possession of the box containing the will was to ask Tippen or any employe of the bank for it. No one was authorized or shown to have taken the will from the locked box of testator, or to have had any opportunity to have done so. He alone had control of and access to it under the evidence adduced. These facts bring the case clearly within the rule that the presumption that testator revoked his will arises when it was in his possession or "accessible" to him and cannot be found after his death. This rule of accessibility to the will by testator has been approved by the Texas courts in the application of presumption of revocation doctrine. Clover v. Clover, Tex.Civ.App., 224 S.W. 916; Aschenbeck v. Aschenbeck, Tex.Civ.App., 62 S.W.2d 326; Shepherd v. Stearns, Tex. Civ.App., 45 S.W.2d 246. It is also the rule in numerous other states. See 34 A.L. R. 1309, and cases there cited.

■ The court admitted the testimony of W. C. Roach, a brother of proponent, to the effect that he heard testator tell his (testator's) father that he expected to leave the bulk of his estate to proponent, who was testator's niece and whom he had partly reared and was very fond of. Aaron

Cummings also testified that testator told him "long before (testator) was married" that he expected to leave the bulk of his estate to proponent. These statements attributed to testator were admitted as tending to show his affection for proponent and his intention to leave her the bulk of his property. But these statements were made long before testator made the will and long before he married, and they are not of such probative value as would overcome the presumption of revocation rule above stated, because they had no relation to the fact that the will which was subsequently executed could not be found after testator's death. And certainly standing alone this testimony was not sufficient to overcome the presumption that testator had destroyed the will with intent to revoke it.

 Proponent, however, proffered the testimony of James A. Davis, her husband, to the effect that in July or August of 1936, preceding testator's death in October, 1936, he told witness that witness need not pay the balance of his note to testator because Mattie Pearl (proponent) would get his property anyway under his will. That testator also told witness on this occasion that things were not going well between himself and his wife, because she had not lived up to her promises, in that she had not joined the Catholic Church as she had promised him; and that she had brought all of her children by a former marriage to testator's home, which she had promised not to do; and that early in 1936 testator told him that he feared for his life and was afraid to stay at home. Witness also offered to testify that between the years 1927 and 1936 testator told him on several occasions that his will took care of Mattie Pearl (proponent), because he loved her and had raised her as his own child. This testimony was proffered as tending to show testator's affection for proponent and as tending to show that she was a beneficiary of his will; and that he had no intention at said times of revoking it. The testimony was excluded as being contrary to the provisions of Art. 3716, which provides that: "In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

If this testimony of the husband was admissible, it was sufficient to overcome the presumption that testator had destroyed the will with intent to revoke it; and a jury question would have been presented on the issue. We have reached the conclusion, however, that the trial court properly excluded the testimony as being inhibited by the provisions of Art. 3716, supra.

Proponent instituted this action by her application to probate the alleged lost or destroyed will under which she was named executrix and was devised a large portion of the estate of testator. She was not joined by her husband in her application to probate the will and to adjudicate her interest thereunder as devisee; nor did he join her in the appeal of contestants to the district court from the order probating the will and adjudicating her interest thereunder as devisee, where, under the applicable statutes, a trial de novo of these same issues was had.

The asserted right of proponent to probate the will and the contest thereof by the heirs of the testator, and the appeal to the district court from the order appointing proponent executrix and probating the will is an action between the executrix as such and the heirs of the testator. The asserted right of proponent to a large portion of the estate of the testator as devisee under his will is an action between proponent personally and the heirs of the testator, which action "plainly arose out of a transaction with the decedent," in that the "action arose from the making of the will" by the decedent. Leahy v. Timon, 110 Tex. 73, 82, 215 S.W. 951; Sanders v. Kirbie, 94 Tex. 564, 63 S.W. 626. And if the husband in the instant case had joined pro forma in this action of the wife to recover her separate property devised her under the will, then, under the rule stated in the Leahy case [110 Tex. 73, 215 S.W. 953], the provisions of the statute in question extended to him, and its language "plainly commanded the exclusion" of his proffered testimony as to the aforementioned statements attributed to testator.

But proponent seeks to avoid the rule stated in the Leahy case upon the ground that she did not make her husband a party to this action. Contestants filed a plea in abatement and special exceptions to her pleadings and action because she was not joined therein by her husband;

which were overruled by the court, and to which action contestants excepted, but have not cross-assigned error thereon. On the question thus presented the trial court apparently held that the husband was at least a proper party to the action of the wife to adjudicate her interest as devisee under the will as against contestants, the heirs of testator; and that, therefore, the statute applied to and inhibited him from testifying as to the aforementioned statements attributed to the testator.

This rule of exclusion of the testimony of the husband where he is not a party to the suit or action of the wife to recover her separate property as against the heirs of a decedent, was recognized and approved by the Supreme Court in the case of Heirs of Reddin v. Smith, 65 Tex. 26, wherein a married woman who was separated from her husband but not divorced and who was not joined in her suit by the husband, sued the heirs of a decedent. The court held that the testimony of the husband as to transactions with the decedent should have been excluded, because he was a proper party to the suit within the meaning of the statute then existing, which is now Art. 3716, supra. The rule thus announced in the Reddin case was again cited and approved by the Supreme Court in the Leahy case, wherein the court say: "The exclusion of parties, within the meaning of the statute, has been extended to a husband separated from his wife, though not divorced, upon the ground of his being a proper party plaintiff. Heirs of Reddin v. Smith, 65 Tex. 26."

No case has been cited nor found which holds that the statute in question does not extend to the testimony of the husband where he is not a party to the action of the wife to recover her separate property as against the heirs of a decedent. On the contrary, the courts hold that the statute does extend to him whether or not he is a party to such an action. It would therefore seem to be immaterial whether the husband of proponent was made a party to this action by her in so far as the applicability of the statute is concerned. And manifestly the proponent could not by filing her own action against the heirs of the testator to adjudicate her interest as devisee under his will affect the status of her husband as a witness in her own behalf under the statute, because he is a proper party to her action, and the courts have interpreted the statute to extend to

and inhibit him from testifying to statements attributed to the testator.

Proponent cites the cases of Mitchell v. Deane, Tex.Com.App., 10 S.W.2d 717, and Kennedy's Estate v. Richardson, Tex.Civ. App., 41 S.W.2d 95, which hold that the provisions of the statute do not extend to the wife of an heir of a testator or testatrix, in a suit to set aside an order probating a will, to which suit the husband, an heir of testator or testatrix, is a party. The decision is rested solely upon the facts that the suit is for the recovery of the husband's separate property, in which the wife has at best only a potential interest, and in which suit the wife is not a "necessary, proper or actual party." These cases are not in point, because the status of the wife with respect to the husband's separate property is different from the status of the husband with respect to the wife's separate property. The statutes authorize and empower the husband to manage and control the wife's separate estate, and to bring suit in his own name for the recovery of the wife's separate property. Arts. 1983–1985. It is the general rule that the wife may sue for her separate property in her own name only where her husband refuses to join her, or has abandoned her, or is insane. Newell v. State, Tex.Civ.App., 103 S.W.2d 194. In fact, it has been the general policy of our laws to impose the duty upon the husband to protect the wife's separate estate, and our statute even provides that when a married woman is appointed executrix of a will, the husband should join her in the execution of her bond, and she is authorized to execute such bond without the joinder of the husband only upon a showing of the statutory reasons why her husband did not join her in the execution of the bond. Art. 3390. And as above stated, we find no case which holds that the statute does not extend to the testimony of the husband, but the Supreme Court has uniformly held that the statute does extend to him because he is at least a proper party to the wife's action to recover her separate property as against the heirs of a decedent.

■ The court correctly excluded certain proffered testimony of witnesses, Sylvester Lewis, Willis Brown, W. C. Roach, and proponent, upon the ground that same was hearsay. The excluded testimony of each witness related to actions, statements, and declarations of Finas Britten, a stepson of testator.

Sylvester Lewis, who was an attorney and a friend of Finas Britten, would have testified that a short time before testator's death Britten sought information as to the laws of descent and distribution in regard to real estate, as well as the effect of a will upon a decedent's property; which information witness gave Britten, not as an attorney but as a friend. Britten also sought information of witness as to whether testator could be made to pay hospital bills and medical expenses of his wife, Britten's mother; and was advised thereon by witness, not as an attorney but as a friend. This testimony was hearsay.

 Witness Willis Brown would have testified that shortly after the death of testator he heard a conversation between Finas Britten and Marvin Brister, in which Britten told Brister that testator had a will, that he knew where it was, but that nobody could get it. This testimony was clearly hearsay.

 W. C. Roach would have testified that he and his sister, proponent, went to San Antonio after testator's death, where Finas Britten was in the United States Army; that Britten told them if he had a leave of absence he could find the will. The leave of absence was obtained and Britten was taken to the home of his mother, which was testator's home before his death, and left there. The next morning he told witness and proponent that he had not found the will. Proponent offered to testify to the same facts; and further that she offered to pay Britten $125 if he could find the will, and that he agreed to try to find it, but did not do so. This proffered testimony was hearsay.

 Proponent sought to introduce this testimony of these four witnesses to show by circumstance that testator left a will which had not been revoked; and to show that the conduct and declarations of Finas Britten were inconsistent, and that Finas Britten was so situated while living in the home of his mother and testator to have taken the will without the knowledge or consent of testator.

If the testimony had been admitted it would have only shown that the will could not be found after testator's death, and was insufficient to overcome the presumption that testator had destroyed it with intention to revoke it under the rule above stated.

 If the purpose of the testimony was to show that Finas Britten made inconsistent statements, then no proper predicate was laid for such impeaching testimony. Britten had no interest in the estate. He was not called as a witness and no proper predicate was laid to impeach the witness as to the alleged inconsistent actions or statements. Such predicate is required: (1) to give the witness an opportunity to bring out his version of the statement or testimony and, in any event, to explain bias or prejudice and inconsistent statements; and (2) because unless introduced to contradict and discredit the witness, testimony as to what the witness said on another occasion would be hearsay. 45 Tex.Jur., 158, § 282, and cases there cited.

The judgment of the trial court will be affirmed.

Affirmed.