**Affirmed and Memorandum Opinion filed January 23, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-01052-CV

### IN THE ESTATE OF FLOYD E. DIXON, DECEASED

**On Appeal from the Probate Court No. 4
Harris County, Texas
Trial Court Cause No. 377,211**

## MEMORANDUM OPINION

This is an appeal from an order denying an application to probate a copy of a will. The principal issue is whether the applicant carried her burden of showing that the original will had not been revoked during the life of the testator. We affirm the trial court's judgment that the evidence is legally and factually sufficient to support a finding that the testator revoked his will.

## BACKGROUND

The decedent, Floyd E. Dixon, was married three times in his life. His final marriage lasted over thirty years until his death on July 31, 2007. Floyd had no children with his surviving spouse, Addie Mae, but he did have eight children from his previous relationships.

Floyd executed a self-proved will on February 16, 2000, in which he appointed his daughter, Rosalyne, as independent executrix. In the will, Floyd made a specific bequest of his home on Shotwell Street to Addie. The residue, including certain financial instruments, was left to his children.

Floyd gave Rosalyne a copy of the will during his lifetime, and he secured the original in a safe deposit box. Addie had no access rights to the safe deposit box. Only Floyd and Rosalyne held a key. Upon Floyd's death, the safe deposit box was searched but the original will could not be located. Rosalyne applied to probate a copy of the will, which Addie contested on the basis of revocation. After a full evidentiary hearing, the trial court found "insufficient evidence of circumstances tending to show that the purported will was not revoked." Because Rosalyne had failed to overcome the presumption of revocation, the trial court denied the application for probate. Rosalyne now appeals from this judgment.

## ISSUES PRESENTED

The briefing is somewhat unclear, but it appears that Rosalyne has asserted three distinct issues on appeal. First, Rosalyne contends that the trial court erred by applying the presumption of revocation because the presumption was not effectively triggered by the pleadings. Second, assuming that the presumption was properly pleaded, Rosalyne argues that there is no evidence in support of the presumption. Finally, Rosalyne contends that even if the presumption is applicable,

2

the evidence is factually insufficient to support the trial court's judgment that the presumption was not overcome. We address each of these issues in turn.

## PRESUMPTION OF REVOCATION

When a validly executed will is last seen in the possession of the decedent or in a place where the decedent had ready access to it, and the will cannot be found after his death, a presumption arises that the testator destroyed the will with the intent of revoking it. *See McElroy v. Phink*, 97 Tex. 147, 154, 76 S.W. 753, 753 (1903); *Hoppe v. Hoppe*, 703 S.W.2d 224, 226 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). This presumption is rebuttable, however. Under sections 85 and 88 of the Texas Probate Code, which were both effective at the time of judgment,[1] a copy of the will may be admitted to probate if the proponent of the will establishes that the cause of non-production was not the result of revocation. *See* Tex. Probate Code §§ 85, 88(b)(3). The proponent of the will satisfies this burden if she demonstrates by a preponderance of the evidence that the original will could not be located after a reasonably diligent search. *See id.* § 85; *In re Estate of Glover*, 744 S.W.2d 939, 940 (Tex. 1988) (per curiam). There is no requirement that the proponent establish the manner in which the original will was lost. *See In re Estate of Catlin*, 311 S.W.3d 697, 700–01 (Tex. App.—Amarillo 2010, pet. denied).

---

[1] In 2009, the legislature passed a bill reorganizing much of the Texas Probate Code into the newly codified Texas Estates Code. The bill repealed section 85 of the Texas Probate Code and transferred it to section 256.156 of the Texas Estates Code. *See* Act approved June 19, 2009, 81st Leg., R.S., §§ 1, 10, 2009 Tex. Gen. Laws 1512, 1609–10, 1731. Section 88 of the Texas Probate Code was similarly repealed and transferred to section 256.152 of the Texas Estates Code. *See* Act approved June 19, 2009, 81st Leg., R.S., §§ 1, 10, 2009 Tex. Gen. Laws 1512, 1608, 1731. The new provisions became effective on January 1, 2014, and the wording in each differs only stylistically from their statutory predecessors. *See* Act approved June 19, 2009, 81st Leg., R.S., §§ 11–12, 2009 Tex. Gen. Laws 1512, 1732.

Addie affirmatively pleaded that Floyd revoked his last will. In her Second Amended Opposition, she asserted as follows:

> The Will filed herein by Applicant, dated February 16, 2000, which purports to be the Last Will and Testament of **FLOYD E. DIXON**, Decedent, **was revoked** by Decedent, prior to his death by him destroying, canceling, and/or obliterating the Original Will. The signed copy of that instrument which has been filed by the proponent in these proceedings is of no force and effect. The Original Will was not found among the personal effects of Decedent, nor was a will found in the customary places where Decedent normally kept his important papers.

(emphasis in original).

Rosalyne argues that this pleading was effectively nullified by two discovery responses. Rosalyne focuses first on a request for admission, wherein Addie was asked to admit or deny that the original will was not found among the decedent's personal effects at the time of his death. Addie's answer to this request was "Denied." According to Rosalyne, the response constitutes an admission that the original was neither missing nor revoked. We disagree. The rules of civil procedure provide that a matter admitted in a request for admission "is conclusively established as to the party making the admission." *See* Tex. R. Civ. P. 198.3. The rules do not similarly provide that a denial conclusively establishes the matter's opposite or inverse. Furthermore, we note that after Addie filed her discovery response, the parties filed a joint motion admitting to certain facts, including the following: "The Original of Decedent's Will was normally kept among his personal possessions but was never found." We do not construe Addie's discovery response as a retraction or nullification of her pleading that the original will was not found.

Rosalyne turns next to an interrogatory, which asked Addie to "set forth all evidence which [she] will offer at trial to establish that Floyd E. Dixon, Decedent, revoked his Will dated February 16, 2000 prior to his death." Rosalyne asserts that Addie's response to this interrogatory was a single word: "None." The record reflects a different response. Our copy shows that Addie asserted numerous objections to Rosalyne's interrogatory, including vagueness, overbreadth, and privilege. Subject to these objections, Addie responded to the interrogatory with the following answer: "Unknown at this time." Even if Addie had responded that she had no evidence to bring forth, we reject Rosalyne's suggestion that this response nullified the presumption of revocation. As the proponent of the will, Rosalyne had the burden of establishing why the original could not be produced in court. *See* Tex. Probate Code § 85. Addie had no corresponding duty to show that the will was revoked. *See id.* § 88(b)(3) ("To obtain probate of a will, *the applicant* must also prove to the satisfaction of the court that such will was not revoked by the testator." (emphasis added)).

We overrule Rosalyne's complaint that the presumption of revocation was never triggered by the pleadings. We now consider Rosalyne's remaining challenges that the evidence is insufficient to support the trial court's findings.

## LEGAL SUFFICIENCY

When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, the reviewing court must then examine the entire

5

record to determine if the contrary proposition is established as a matter of law. *Id.* We will reverse the trial court's judgment only if (a) there is a complete absence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

The record reflects that Floyd stored his original will in a safe deposit box, to which only he and Rosalyne had access. Rosalyne testified that she never had care or control of the original. During Floyd's life, Rosalyne asserted that she would go to the bank only when she was accompanying Floyd. A bank representative testified that Floyd accessed the safe deposit box for the last time on July 7, 2007, less than four weeks before his death.[2] When Rosalyne searched the safe deposit box in the days immediately following Floyd's passing, she claimed that the original will could not be found. Rosalyne testified that the safe deposit box contained other important papers, including a property deed, a promissory note, and a copy of the will, but not the original itself. This evidence supports a finding that the original will was removed from the safe deposit box by Floyd and never recovered. Accordingly, there is legally sufficient evidence that Floyd destroyed his will with the intent of revoking it. The trial court did not err by applying the presumption of revocation.

---

[2] Rosalyne argues that this testimony may not be considered because the trial court admitted a business record showing only Rosalyne's visits to the safe deposit box, not Floyd's. However, Rosalyne did not assert this objection when the testimony was elicited. Because the testimony was admitted without objection, Rosalyne has not preserved her complaint for appellate review. *See* Tex. R. App. P. 33.1

# FACTUAL SUFFICIENCY

When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, the party must demonstrate that the adverse finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Dow Chem.*, 46 S.W.3d at 242. Our scope of review includes all evidence relevant to the adverse finding. *Id.* In cases involving a lost will, we examine the evidence mindful of such factors as (1) whether the decedent recognized his will's continued validity, (2) whether the decedent had continued affection for the chief beneficiary of his will, (3) whether the decedent was dissatisfied or had any desire to change his will, and (4) any other circumstances bearing on the decedent's intent. *See In re Estate of Turner*, 265 S.W.3d 709, 713 (Tex. App.—Eastland 2008, no pet.); *In re Estate of Capps*, 154 S.W.3d 242, 245 (Tex. App.—Texarkana 2005, no pet.).

The evidence showed that Floyd was a very loving father. He emphasized education and supported his children through college. Rosalyne testified that there was never a change in the relationship between Floyd and her siblings. They all got along, and the entire family was always welcomed at Floyd's home. Over the holidays, Floyd would occasionally give his children money. Citing this evidence of continued affection, Rosalyne argues that it is unlikely that Floyd would have revoked his will and reduced his children's share of his estate.

Rosalyne also refers to other evidence showing that Floyd had provided for Addie in other ways in his estate planning. For instance, Floyd transferred his retirement benefits to Addie, and he knew that she would collect his social security as a surviving spouse. Floyd knew that Addie had her own retirement plans, which, when combined with Floyd's, provided her with an annual income of approximately $66,000. Floyd also knew that Addie had other assets, including

five homes that she acquired before their marriage.[3] Rosalyne contends that this evidence demonstrates that Floyd knew that Addie was secure financially, and that she did not need to take additional assets from Floyd's estate.

The record contains other evidence, however, demonstrating that Floyd had a valid reason for revoking his will: Floyd was deeply devoted to his wife. For example, he once bought her a brand new automobile, and when she did not like the color, he bought her another one. During their retirement, Floyd and Addie visited all fifty states together and they became world travelers, seeing Brazil, Japan, and Korea, among other places. Rosalyne herself testified that Floyd would always implore her to "please, take care of Addie" after he died.

As mentioned above, Floyd made only a single bequest to his wife, their home on Shotwell Street. Although it was extensively remodeled during the marriage, the home was actually Addie's separate property. Floyd, who had a legal education, could have determined that Addie would have benefited better from his estate if he revoked his will. Indeed, revocation is consistent with Rosalyne's testimony that Floyd wanted Addie to be taken care of. Despite there being no evidence that Floyd ever voiced dissatisfaction with his will, the trial court's finding that Rosalyne failed to overcome the presumption of revocation is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

---

[3] Addie testified that she sold these properties after Floyd's death because she could not properly insure them. The homes apparently required extensive repairs. Addie testified that she "gave them away" for about $60,000 total.

**CONCLUSION**

We overrule each of Rosalyne's issues and affirm the trial court's order denying her application for probate.


/s/    Tracy Christopher
        Justice


Panel consists of Justices Christopher, Donovan, and Brown.