## DANNENBAUER v. MESSERER'S ESTATE et al. (No. 3508.)

Court of Civil Appeals of Texas. Texarkana. March 8, 1928.

Rehearing Denied March 29, 1928.

1. **Wills ⬅297(4)—Testator's statements indicating he had not made subsequent wills as contestants alleged held not inadmissible as conclusion.**

In will contest in which issue was whether testator had made subsequent wills revoking will offered for probate, testimony as to testator's statements indicating that he had not made subsequent wills *held* not inadmissible as legal conclusion, notwithstanding testator's use of words "will" and "signed" in referring to what he had previously done.

2. **Wills ⬅290—Proponent of will must prove it has not been revoked.**

Proponent of will *held* to have burden of proving that will offered for probate had not been revoked.

3. **Wills ⬅297(1)—Where testator's state of mind becomes proper subject of inquiry, his declarations are admissible to show such state of mind.**

Where state of mind of testator becomes proper subject of inquiry in will contest, his declarations are admissible to show what that state of mind was.

4. **Witnesses ⬅178(3)—Proponent of will called as witness by contestants cannot, on cross-examination, testify to conversation with testator except those as to which she was interrogated by contestants.**

Where proponent of will was called as witness by contestants, she was competent to testify on cross-examination as to all relevant statements made by testator in conversation

with her as to which she had been interrogated on direct examination, but she was not competent to testify as to conversation and transactions about which she had not been interrogated by contestants.

#### On Motion for Rehearing.

**5. Wills ⬅297(4)—Testator's statements indicating that he had not made subsequent wills, as contestants contended, held admissible, and not hearsay.**

In will contest in which issue was whether testator had made subsequent wills revoking will offered for probate, testimony as to testator's statements indicating that he had not made subsequent wills *held*, admissible as showing state of mind, as against contention that they were hearsay.

**6. Wills ⬅290—Proponent producing will and proving execution made prima facie case without proof that will had not been revoked.**

Where proponent produced will and proved its execution according to statutory provisions, she made out prima facie case authorizing court to admit will to probate and was not required to go further and prove that will had not been revoked.

**7. Wills ⬅288(1)—Proponent making prima facie case was not relieved of burden to show instrument offered was testator's last will when prima facie evidence was weakened.**

Proponent who produced will and proved execution according to statutory provisions was not relieved of burden of producing preponderance of evidence to show instrument offered was last will of testator when prima facie evidence was weakened, for, while weight of evidence may shift, burden of proving legal right to relief remains on proponent throughout trial.

Appeal from District Court, Fannin County; George P. Blackburn, Judge.

In the matter of the estate of Fritz Messerer, deceased. Will contest by Mrs. Mary Compton and others, opposed by Mrs. Margaret Dannenbauer, proponent. From a judgment of the county court admitting the will to probate, contestants appealed to the district court. The district court entered judgment refusing to probate the will, and proponent appeals. Reversed and remanded.

·Cunningham & Lipscomb, of Bonham, for appellant.

Beauchamp & Lawrence, of Paris, and J. I. Warren, of Honey Grove, for appellees.

HODGES, J. This appeal is from a judgment in the district court of Fannin county refusing to probate the will of Fritz Messerer. The will was dated November 29, 1897, and was executed in compliance with the forms required by the statute. By its terms the will devised all of the testator's property, after the payment of his debts, to his sister Mrs. Margaret Dannenbauer. Messerer died on the 25th day of January, 1927, leaving an estate valued at more than $200,000. His

only heirs were two sisters, one brother, and the children of one or more deceased sisters. When the will was presented in the county court for probate it was contested by Mrs. Mary Compton, a sister of the testator, and the children of a deceased sister. The grounds of the contest were undue influence and revocation, which will be more fully stated hereinafter. From a judgment of the county court admitting the will to probate the contestants appealed to the district court.

The following is, in substance, a part of the family history of the testator and the parties to this suit: Fritz Messerer was born in Germany, and came to America in 1882. A few years later he was followed by his two sisters, who are parties to this suit, and a brother. He was never married, and lived with other members of the family. About 1897 his sister Mary, now Mrs. Compton, married a native American. This marriage seemed to offend her brother Fritz, and shortly thereafter he made the will which is now being contested, leaving all of his property to his sister Margaret, Mrs. Dannenbauer. However, in course of time he became reconciled to his sister Mary, and showed evidences of affection for her and her children and friendship for her husband. There was testimony tending to show that he made other wills before he died which either expressly or impliedly revoked the will of 1897. The last of those wills, it is contended, gave some of the property to his sister Mary, one of the contestants. The contestants pleaded that the resentment of Messerer towards his sister Mary because of her marriage was aggravated and intensified by the proponent, Margaret Dannenbauer, who, it is claimed, took advantage of that state of mind and persuaded her brother to make a will in her favor. They further pleaded that Messerer made three other wills after the will of 1897. One, it is alleged, was made in 1900; another in 1907 or 1908; and a third in 1919. None of these wills could be produced, and it was alleged that they were lost.

In the trial evidence was produced tending to support the facts pleaded by contestants. In response to special issues the jury found against the contestants upon the issue of undue influence.. They also found that no will had been executed by Messerer in 1908. But they further found that Messerer did execute a second will in 1900,· and a third in 1919, and that each of those wills revoked all previous wills. Upon those answers the court entered a ·judgment refusing to probate the will of 1897. The contestants did not attempt to probate any other will, but only sought to defeat the probate of the first will. They were apparently willing to take part of the property under the law of descent and distribution.

The real controversy in the trial below was, Did Fritz Messerer make a will after 1897 revoking the will offered for probate? The principal complaint in this appeal relates to the exclusion of statements and declarations of the testator which tended to show that no subsequent will was made by him, and that the first was the only will he had ever made. As proof of the execution of a will in 1900 the contestants offered the testimony of J. A. Underwood, the substance of which is as follows:

Witness was well acquainted with Messerer, and was president of a bank in which Messerer held stock. Some time in 1900 he had occasion to assist Messerer in the preparation of a will. He did that at Messerer's request. Messerer wanted to dispose of his property by will, and his sister Mrs. Dannenbauer put in charge of it on account of some objection to her husband. He did not want her husband to have the management or control. Messerer requested witness to write a will for him, to which the witness finally consented, and used as a guide a form book. From the data furnished him by Messerer he wrote a will, which devised all of the testator's property to his sister Margaret, and she was made executrix. When asked if the will contained a clause revoking former wills, the witness stated that according to his best recollection it did, but he was not certain. He was certain, however, that if the form book contained a revoking clause, then that clause was written into the will. He stated that the will was signed by him as a witness, and by another adult person, whose name he had forgotten. He said:

"I signed it and this other person signed it, and then I turned it over to Fritz and I have not seen that will since. I read the will over to Fritz, and he signed his name to it then. Fritz signed his name first. I was present when he signed it, and he was present when I signed it and when the other person signed it. The explanation that he gave for wanting to make the will was that he wanted to fix his property and the management of it in 'Sister Margaret.' At that time he was of sound mind, and remained so as long as he lived, so far as I know."

As proof of the execution of the will of 1908 contestants offered the testimony of E. C. Armstrong, who testified, in substance, as follows:

In 1908 witness was engaged in the practice of law in Honey Grove, and was acquainted with Messerer, who was in business at the same place. In the practice of law witness was associated with J. W. Gross, who wrote a will for Messerer in 1897. He remembered the occasion of Gross writing a will for Messerer about 1908. He thought he read the will, or most of it. He remembered distinctly standing at the back of Gross while he was writing it, who told witness what he was doing. He did not remember the terms of the will, except that it appeared to be rather liberal with the nieces and nephews of the testator. Witness could not state whether or not that will was ever signed by Messerer or by witnesses.

As evidence of the execution of the will of 1919 contestants offered the testimony of Miss Lillian Knox, the substance of which is as follows:

She was employed as stenographer in the office of J. N. Baldwin, an attorney residing in Honey Grove, during the years 1918 and 1919. While she worked for Baldwin he did much work for Messerer. He wrote deeds for Messerer, and a will also. Witness recalled distinctly the occasion of Baldwin's writing a will for Messerer some time in March, 1919. In response to a message Baldwin went over to Messerer's place of business. A short time later both Baldwin and Messerer returned to the office, and while Messerer was there Mr. Baldwin dictated a will, which she wrote on her typewriter. Witness stated that she remembered the following clause in the will:

"I, Fritz Messerer, of Honey Grove, Fannin county, Texas, being of sound mind and memory, do hereby make this my last will and testament, hereby revoking all wills heretofore made by me."

In the second clause he wanted a decent Christianlike funeral and his debts paid. The will then went on to bequeath property to different ones. Witness recalled Mrs. Dannenbauer's name. Several others were mentioned in the will, including a brother, a sister, and some nieces and nephews of Fritz. Messerer remained in the office until the will was finished, and witness saw him sign it. Mr. Baldwin signed the will as a witness, and she did also, according to her best recollection. She was positive that the will was signed and witnessed. No one else was in the office at the time except those three. After the will was signed, Messerer told Mr. Baldwin to take it to the State National Bank for him. Witness put the will in an envelope and sealed it.

Testimony was offered by proponent tending to impeach the witnesses Underwood and Miss Knox by showing that they had previously made statements to the contrary of what they testified in the trial, after each of those witnesses denied making the conflicting statements.

During the trial the proponent, Margaret Dannenbauer, was called as a witness by the contestants and was asked this question: "Did Fritz ever tell you about writing another will?" to which she answered, "No." On cross-examination the witness was asked by her counsel this question: "I will ask you if Fritz had any trouble in the way of sickness when he sent for the will?" to which the witness answered, "Well, he was kind of sick last winter." Counsel then said: "I will ask you if he did not at that time tell

you this was his will and that he had never made any other?" At that juncture the contestants objected to any statements made by the deceased as to the contents of the will or what he had done, and further because the witness was disqualified under the law to testify to any transactions between herself and the deceased. The objection was sustained. The bill of exception shows that if the witness had been permitted to do so, she would have answered as follows: "Fritz Messerer had stated to her during his last illness that this was the only will that he had ever made, and that he had never made any other."

Proponent's witness Henry Allen was asked the following question:

"Now, Mr. Allen, I will ask you to state what, if anything, Mr. Messerer said as to whether or not his will [the will offered for probate] was the only will he had written, and whether he desired to change it."

Contestants objected upon the ground that the testimony sought to be elicited would be hearsay, too remote, and a legal conclusion of deceased as to the effect of any instrument which he might have signed. The court sustained the objection. The bill of exceptions shows that if permitted to do so, witness would have answered:

"Fritz Messerer stated to me at that time that the will prepared by Will Gross in 1897 was the only will that he had ever signed or attempted to execute, and that he desired his property to go according to the direction of the will."

R. T. Lipscomb was called by the proponent as a witness, and testified without objection that he visited Fritz Messerer in Honey Grove, Tex., at his request during the early part of the year 1927. He was then asked the following question:

"What did he tell you, if anything, with reference to the will that is offered for probate?"

That testimony was objected to upon the ground that it was irrelevant, immaterial, and inadmissible for any purpose, being the statement of the testator made 30 years subsequent to the making of the will offered for probate. The court stated, in effect, that he would admit the testimony upon the issue of undue influence, but would restrict it to that alone. The witness was then permitted to answer:

"As stated, he [Messerer] went back to the back part of his business and sat down, got this out [the will offered for probate], and handed it to me and had me read it over, and I did, and he told me that the will as it was written was the way he wanted his property to go. He told me that he wanted his property to go to his sister Mrs. Dannenbauer. He said in that connection that he had a sister, as I remember, at Denton, or at least had lived there."

On objection, the court refused to permit the witness to further state:

"That this sister at Denton, Mrs. Compton, had not been there and helped him as much as Mrs. Dannenbauer, and that there had been some claim by Mrs. Compton as to an interest in the property, and that it was his desire, and had been all along, that Mrs. Dannenbauer have all the property after his death."

There was other similar testimony excluded, but that which has been quoted is sufficient for a discussion of the controlling questions presented in this appeal.

In the trial of the case the only contested issue material to be considered was, Had the will offered for probate been revoked by the execution of one or more subsequent wills? The question before us is, Were the declarations of the testator, excluded in the trial court, admissible as evidence tending to prove that the testator had not executed such revoking instruments? It is conceded by counsel for both parties that there is much contrariety of opinion on that subject among the courts of other states. The diversity is such that we think it unnecessary to refer to those decisions, except such as have been approved and cited in opinions rendered by the courts of this state. It also appears that there is at least an apparent conflict in the decisions of our own court of last resort upon that subject.

Contestants rely mainly upon the case of Kennedy v. Upshaw, 64 Tex. 411, in which the opinion of the court was written by Justice Stayton. That was a case in which an application was made to probate a will with a codicil. The codicil merely revoked that provision of the will which named certain parties as executors, and appointed others. The probate of the codicil was resisted upon the ground that it was not executed by the testator, but was forged. As evidence tending to prove that the testator had not executed the codicil, the contestants were permitted by the trial court to introduce in evidence the following declarations of the testator made a short time before his death:

"No, I have not made any change in my will or in the disposition of my property, and I am not going to; and I am surprised that you ask me such a question."

On appeal, it was held that those declarations should have been excluded. It appears from the extracts from other decisions quoted by Justice Stayton that he based his ruling upon the ground that such declarations, not being res gestæ, were hearsay. While that case has not been expressly overruled, the allusions made to it in later decisions by our Supreme Court indicate a view that it should be limited to the particular facts there involved, or that the declarations offered were inadmissible upon the ground that they were the statements of a legal conclusion by the

testator. The latter view is expressed by Chief Justice Phillips in Scott v. Townsend, 106 Tex. 322, 166 S. W. 1138, although no such objection was made when the declarations were offered.

The difference between the question decided in Kennedy v. Upshaw and the controlling question in this case is slight. In that case the revoking or modifying codicil was produced and presented for probate, and the question was, Had it been signed by the testator? While in this case the revoking instruments cannot be produced in court, and the question is, Were any such instruments ever executed?

If the case of Kennedy v. Upshaw stood alone as the last explicit expression of our Supreme Court on that subject, there would be much difficulty in evading its force as a precedent supporting the action of the trial court in excluding the declarations of the testator in this case. In view of their approval by later decisions of our Supreme Court, two cases involving somewhat similar issues, which were decided before Kennedy v. Upshaw, may be referred to in this connection as appropriate precedents. Those cases are Tynan v. Paschal, 27 Tex. 286, 84 Am. Dec. 619, and Johnson v. Brown, 51 Tex. 65.

In the Tynan Case an application was made to probate a will which could not be produced. Its probate was resisted by the heirs at law on the ground that no such will had ever been executed. In the trial court a witness was permitted to testify that he at one time had the will in his possession, and during that time he received a letter from the testator, then in another state, directing witness to destroy the will; that later, when the testator returned to Texas and was informed that the will had not been destroyed, he expressed much gratification and stated, in effect, that he wanted his property to go to the beneficiaries named in the will. The trial court instructed the jury that those declarations were not legal evidence of the execution of the will, but were admissible as tending to corroborate the evidence of its execution and to destroy the presumption of its cancellation. That charge was approved on appeal, but the case was reversed on the ground that the evidence in its entirety was not sufficient to prove the execution of the will in accordance with statutory requirements.

In Johnson v. Brown an application was made to probate a will produced in court which was contested on the ground that it was forged. In the trial court a witness was permitted, over objection, to testify to declarations made by the testator showing feelings of hostility towards two of the devises in the purported will. After discussing a number of authorities, the court held that the declarations were properly admitted, stating:

"Not, of themselves, as proof sufficient to overcome the testimony of the subscribing witnesses, but as a circumstance, in a case of this character, proper for the consideration of the jury in connection with all the other facts and circumstances in evidence."

In McElroy v. Phink, 97 Tex. 147, 76 S. W. 753, 77 S. W. 1025, there was an application to probate a will alleged to be lost. The question on appeal was, Did the evidence support a finding that the will had not been revoked? The evidence justified the conclusion that such a will had once been made, but there was cogent evidence tending to show that it had been subsequently destroyed by the testatrix. During the progress of the trial the contestant offered to prove by a witness that a short time before the death of the testatrix he had a conversation with her about the will; that in that conversation the testatrix told witness that she had sent for the will and had burned it, that she did not want the beneficiaries named in the will to have the property. Those declarations were excluded, and that ruling was assigned as error on appeal. The Supreme Court held that the declarations should have been admitted. In discussing the objection that such declarations should be excluded upon the ground that they were hearsay, the court said:

"Two reasons are urged against the admissibility of such testimony: First, that it consists of mere declarations of one not a party to the suit, and is therefore hearsay; and the second is that it opens a door to fraud and forgery. As to the latter, it is sufficient to say that we deem it of very little weight, because, as we think, the same may be said of much other parol testimony, the admission of which is never questioned. As to the first ground, the general rule is that the declarations of third parties are not competent evidence. But conceding, for the sake of the argument, that the declarations of a testator are properly classed as declarations of a third party, the question presents itself whether they ought not to be considered as standing upon a different basis, and to be treated as an exception. Exceptions are made in other cases as to the declarations of deceased persons. For example, declarations as to pedigree and declarations made in the usual course of business by persons who have since died are admitted. The position of the testator is very different from that of an ordinary third person, whose declarations may be offered in support of an issue upon the trial of a case. Both the proponent of the will and the contestant claim under him. As a very general rule, he best knows the facts about which he makes the statement. His will is ambulatory, and subject to be changed or revoked. No one has any right under it until his death. He has a right to make such disposition of his property as he may wish, and, as a rule, he has no interest to induce him to make a false statement about the matter. The testimony which was offered and rejected in this case, and which we are now considering, strikingly illustrates the views we have just expressed. It tended to show that

what McElroy said to Hanna when he went for the will was, 'My wife wants it,' and that the testatrix had changed her mind, and had got the will into her possession, and had destroyed it for the purpose of revoking it. We are of the opinion that the introduction of such testimony is not forbidden by sound policy, and that it violates no rule of law. We conclude that the court erred in excluding the evidence."

The cases of Tynan v. Paschal and Johnson v. Brown were approvingly cited by Justice Gaines, who wrote the opinion. Kennedy v. Upshaw was referred to as being in conflict with the earlier cases, but as not overruling those cases. In that connection Justice Gaines said: .

"When the declarations of an alleged testator consist, in effect, of the naked assertion that he has made a will, or that he had revoked one that is proved to have been executed, they are generally excluded; and we think such action is proper, for the reason that such declarations are merely statements of a legal conclusion and not a statement of the facts from which that. conclusion should be deduced."

In Buchanan v. Rollings (Tex. Civ. App.) 122 S. W. 962, an effort was made to probate a will which could not be produced. It was contested by the husband of the testatrix and an heir at law. The proponents were permitted to prove declarations made by the testatrix a short time before her death, that she had made her will and had therein provided for her nephew, in whose behalf the effort was being made to probate the will. The testimony in that case showed that the last time the will was seen it was in the possession of the testatrix. A writ of error was refused by the Supreme Court upon an application which presumably assigned as error the admission of those declarations.

So far as we have been able to ascertain, those are the latest rulings made and approved by our Supreme Court.

The question then is, Did the trial court err in excluding the proffered testimony of the witness Allen and in restricting the testimony of the witness Lipscomb to the issue of undue influence? Under the record before us there are but two grounds upon which those rulings of the trial court can be justified. One is that the declarations offered are hearsay, and the other is that they were mere expressions of legal conclusions. If we adhere to the rule stated by Justice Gaines in the quotation from McElroy v. Phink, then, clearly, the declarations should not have been excluded upon the ground that they were hearsay. There is nothing in the evidence to indicate that Messerer was not at that time in his normal state of mind, or that his memory had been impaired by age or disease. There was no apparent. reason why he should not have been candid in discussing his affairs. If he had made any other will, he could have had no motive for concealing that fact from the men to whom

4 S.W. (2d)—40

he was then talking. So far as the record shows, neither of them had any beneficial interest in the disposition of his property, or represented any one who did have such an interest. If there was any uncertainty arising from the execution of prior conflicting instruments which he knew to be wills, that was an appropriate time to remove that uncertainty by the execution of still another will.

[1] The next question is, Were the declarations offered the expressions of a legal conclusion? It is true that, in detailing their conversations with the testator, the witnesses state that he used the word "will" in referring to what he had previously done. But when we take into consideration the particular circumstances surrounding the parties at that time it is clear, we think, that Messerer was not using the term as descriptive of a legal instrument, but to designate a particular document which he then had before him and which had just been read in his hearing. That particular instrument, which had been written many years before by Gross, was what Messerer evidently had in mind, if he made the declarations attributed to him by Allen and Lipscomb. It is also to be noted that he used in that connection the word "signed," which is clearly expressive of a fact.

We are of the opinion that the court should not have excluded the testimony of Allen, and should not have restricted the testimony of Lipscomb to the issue of undue influence. The facts of this case do not present a situation where the testator may have been mistaken as to the legal character of an instrument executed by him. Those relied on as constituting a revocation, if executed, contained all the formal provisions of a will, and were signed and witnessed according to the requirements of the statute. If the testimony of contestants' witnesses be true, there could have been no mistake on the part of Messerer about the legal character of what he had done in executing such instruments.

[2, 3] The proponent in this case had the burden of proving that the will offered for probate had not been revoked. In the trial she was confronted with testimony tending to show that it had been expressly revoked. The proof of such revocation depended on the credibility of parol testimony which had been to some extent impeached. The state of the evidence was such that the jury might have found either way on the issue of revocation. The proponent was therefore entitled to have the jury consider every legitimate fact and circumstance which tended to discharge the burden which she has assumed. It has uniformly been held that where the state of mind of the testator becomes a proper subject of inquiry his declarations are admissible to show what that state of mind was. In this instance the state

of mind disclosed by Messerer in his conversations with Allen and Lipscomb, and his conduct in recognizing the will of 1897 as the only will he had ever made, is a circumstance wholly inconsistent with any act revoking that instrument. We think the jury should have been permitted to consider what he said and did on those occasions for what they were worth in passing on the issue of revocation.

Appellant has assigned as error the action of the court in giving certain special charges to the jury after her counsel had made 'the concluding argument. A controversy arose between the trial judge and counsel for appellant as to the language used by counsel in that argument. As a result two sets of bills of exception are presented in the record; one by the court, and another signed by bystanders under the provisions of the statute. In addition to these bills, contesting and supporting affidavits were filed by the parties. However, in view of what has been said concerning the admissibility of the rejected testimony, it is not necessary to pass upon those assignments, as the same questions are not likely to arise upon another trial.

[4] Complaint is also made at the refusal of the court to admit testimony of Mrs. Dannenbauer in answer to an interrogatory propounded by her counsel on cross-examination. If Mrs. Dannenbauer, who was the proponent, when called as a witness by contestants had been interrogated as to a conversation occurring between her and the testator, she was a competent witness to testify on cross-examination as to all relevant statements made by the testator in that conversation. But she was not a competent witness to testify as to conversations and transactions about which she had not been interrogated by contestants. The bill of exceptions does not make it clear whether the testimony sought to be elicited on cross-examination by her counsel related to the same conversation or transaction about which she was interrogated by contestants. We are not prepared to say that the court committed an error in excluding her testimony upon the statutory ground alone.

The remaining assignments of error which do not raise questions substantially the same as those discussed are overruled.

For the reasons stated, the judgment will be reversed and the cause remanded for a new trial.

### On Motion for Rehearing.

[5] In their motion for a rehearing, counsel for the appellees have presented what we regard as an able and conservative argument defending the ruling of the trial court in excluding the declarations of the testator. They insist that such declarations, when offered as evidentiary statements that an act has been done or has not been done, fall within the general rule of those made by

third persons and should be rejected as hearsay. In Scott v. Townsend, previously referred to, it was held on appeal that the declarations of the testator, Scott, as to what his wife has said and done with reference to his making a will should have been excluded as hearsay. On the other hand, in McElroy v. Phink it was held that the declarations of the testatrix as to what she herself nad done were admissible. In the second case the declarations were distinctly narrative of a transaction, and their probative value depended upon the truth of what the declarant had said. The distinction between the two cases above referred to is that· in the first the declarations related to the acts and conduct of a third person, whereas in the second they related to the acts of the testatrix herself. If in this case our holding upon the proposition stated by appellees is in conflict with Kennedy v. Upshaw, it is in harmony with the ruling of the Supreme Court in the later case of McElroy v. Phink.

[6, 7] It is further contended that the declarations of the testator should not be admitted as primary evidence of a fact which the proponent was required to establish— that the will offered ·had not been revoked. The argument is that when the will of 1897 was produced in court and its execution proved in the manner required by statute, the burden then shifted to the contestants 'to prove that it had been revoked. Doubtless that was the practical effect of the proceedings in the trial court. When the proponent produced the will and proved its execution according to the statutory provisions, she made out a prima facie case which authorized the court to admit the will to probate. She was not required to go further and prove that the will had not been revoked. McElroy v. Phink, supra. But that proof was prima facie only, and did not relieve the proponent of the burden of producing a preponderance of the evidence essential to prove the instrument offered by her was the last will of the deceased when the prima facie evidence had been weakened. While the weight of the evidence may shift, the burden of proving a legal right to the relief sought remains upon the plaintiff throughout the trial. Clark v. Hills, 67 Tex. 148, 2 S. W. 356; Boswell v. Pannell, 107 Tex. 433, 180 S. W. 593; Pierce v. Baker (Tex. Civ. App.) 238 S. W. 699.

However, in determining the admissibility of the declarations here involved, it is immaterial where the burden of proof rested. They were offered as evidence tending to show that the will of 1897 had not been revoked by the making of a subsequent will. If they were admissible for that purpose, it is of no practical importance in this appeal at what stage of the trial those declarations were offered.

If we concede the correctness of the argu-

ment by counsel as to the burden of proof the case presents this situation: Contestants were undertaking to prove the execution of one or more wills by Messerer subsequent to 1897. None of those wills could be produced in court. Under the rule announced in the cases previously cited and discussed, contestants might have claimed the right to offer as evidence any declarations made by the testator which tended to show the making of one or more of those lost wills. If Messerer had made statements expressive of dissatisfaction with his former will, or of hostile feelings toward the sole beneficiary in that will, or of an altered state of his feelings toward his relatives who had not been provided for in that will, and a desire that they share in his estate after his death, such declarations, if offered by contestants, might have been admitted, not as supplying a lack of the proof required by the statute, but as a circumstance tending to strengthen that proof. If declarations favorable to the contestants upon that issue were admissible, upon what ground should equally as relevant unfavorable declarations be excluded?

As stated in the original opinion, we think the chief evidentiary value of the declarations made by Messerer consisted of the state of mind which those expressions disclosed. The fact that at such a time and under such conditions he made those declarations in connection with the exhibition of his first will was a circumstance which the proponent had the right to present for the consideration of the jury in determining whether or not the subsequent wills had been executed as alleged.

The motion is overruled.