## TEETER et al. v. MID-WEST ENTERPRISE CO.

No. 25890.   Nov. 26, 1935.

(Syllabus.)

T. G. Chambers, for plaintiffs in error.

Keaton, Wells, Johnston & Barnes, for defendant in error.

PER CURIAM. This case comes to us on appeal from the sustaining of defendant's demurrer to the plaintiffs' amended petition.

The plaintiffs' action is based on an alleged breach of a written lease. The plaintiffs, in their amended petition, allege that, on or about the 19th day of May, 1930, they entered into a lease contract with the defendant, Mid-West Enterprise Company, a corporation, whereby the defendant leased to the plaintiffs property located in Oklahoma City to be used by the plaintiffs as a theatre. The lease was for five years commencing July 31, 1930. Plaintiffs further allege that the lease provided that the lessor should, during the term of the lease, make any repairs necessary to the roof or walls of the building on the leased premises and should bear the expense thereof. A copy of the lease is attached to the plaintiffs' amended petition. Plaintiffs then allege, after setting forth that they entered into possession and paid the rent as it became due, that on or about January 1, 1932, the defendant breached its contract in that it allowed the walls and roof of the building on the leased premises to become deteriorated and unsafe and unsuitable in that both side walls absorbed moisture and rain to the extent that the interior finishing and decorations were ruined; that the lime plastering between the bricks in the walls washed and crumbled away and that cracks appeared in the walls where large girders were supported, one of which girders supported the entire balcony of the building, and that the foundation of the walls and all the flooring of the building sank and the roof of the building became weakened in its structure to such an extent that it

was dangerous for occupation; that the plaintiffs continued to pay rent under the terms of the lease contract up to and including the 31st day of May, 1932, at which time, by reason of the acts of the defendant, the theatre building became unsafe and could no longer be used for theatre purposes; that on the 26th day of August, 1932, the leased premises were condemned for theatre purposes, or for the assembly of people for any purpose by the building superintendent and fire chief of Oklahoma City, for the reasons above stated; that because of the defendant's failure to repair, the plaintiffs were, on the 26th day of August, 1932, evicted from the premises by the defendant, and did, at that time, abandon and surrender the premises to the defendant; that the plaintiffs had advised the defendant, after the above-described conditions appeared in the building on the premises, of such conditions, and repeatedly asked the defendant to remedy the conditions, but that the defendant repudiated the contract and advised the plaintiffs that in no event would it allow them to make any repairs to the building and in no event would it pay for any such repairs made by the plaintiffs on the building for the deterioration and damage to it heretofore enumerated, and advise the plaintiffs that if any repairs were made on the building by the plaintiffs, such repairs would have to be paid by the plaintiffs. The plaintiffs then allege in their amended petition the damages purported to be sustained by them.

The only material part of the written lease attached to the plaintiffs' amended petition, necessary to be considered on the defendant's demurrer, is as follows:

"That the lessee shall, at their own expense, make all repairs and replacements that may be necessary for their occupancy of said premises covering the theatre equipment, furnishings, plumbing, electrical work and painting, provided any repairs necessary to the roof or the walls of the building shall be borne by the lessor."

It is the contention of the defendant, and apparently the theory on which the trial court sustained the demurrer to the amended petition, that the provision, just quoted, of the lease did not impose upon the defendant the obligation to make the repairs to the walls and roof, but that such provision simply imposed on the defendant the obligation of paying for the repairs to the walls and roof, after they were made, and that it was the duty of the lessees, if the

repairs were to be made, to make them. Assuming for the moment, and for the moment only, that the construction placed on the above clause in the lease by the defendant is correct, such position overlooks the allegations in the petition that the defendant "repudiated the lease contract and advised the plaintiffs that in no event would it allow these plaintiffs to make any repairs to the building for the deterioration and damages to the building, and in no event would it pay for any such repairs made by the plaintiffs on the building for the deterioration and damages to it, and advised the plaintiffs that any such repairs made by them would have to be paid by the plaintiffs." These allegations in the amended petition, which we must on demurrer take as true, are to the effect that the defendant, lessor, would not pay for the repairs, if they were made. This, if true, was a repudiation on the part of the lessor of its obligation under the terms of the clause in the lease, even if we take the construction urged by the defendant of such clause. There was no obligation on the part of the lessees to make these repairs, if the lessor would not pay for them. Without the repairs, it was impossible, according to the amended petition, for the plaintiffs to continue to occupy the premises. There was, therefore, a constructive eviction.

Under the construction placed by defendant on the "repair" clause in the lease, at the time the defendant notified the plaintiffs it would not pay for the repairs, in the event they were made, the time for the defendant to pay for the repairs had not then arrived, but the great weight of authority to-day is that renunciation of a material part of a lease contract by one party before the time fixed for performance gives an immediate right of action to the adverse party, and there is no obligation upon such adverse party to complete his part of the contract. Page on Contracts (2d Ed.) vol. 5, sec. 2885; Colorado Yule Marble Co. v. Collins (C. C. 8th) 230 Fed. 78; In re Mullings Clothing Co. (C. C. 2d) 238 Fed. 58; Holt v. United Security Life Ins. & Trust Co. (N. J. L.) 67 Atl. 118; Central Trust Co. v. Chicago Auditorium Association, 240 U. S. 581, 60 L. Ed. 811; Roehm v. Horst, 178 U. S. 1, 44 L. Ed. 953; Gans v. Olchin & Co. (Conn.) 145 Atl. 751, 63 A. L. R. 428; Park et al. v. Ensign (Kan. App.) 63 P. 280. It is true that where there is an obligation upon the part of a landlord to make repairs, or to pay the cost of repairs, where the

repairs are trivial in comparison with the damages naturally resulting from the continued existence of the defects, it is the duty of the lessee to proceed to make the repairs, and to deduct the cost from the rent, or to sue for damages, but where the repairs are substantial, in comparison with the damage, it is optional with the lessee either to make the repairs at the expense of the landlord, or to refuse to make them and to hold the landlord for the damages sustained. Dittman v. McFadden, 159 Okla. 262, 15 P. (2d) 139. For the reasons above stated, even if the construction placed by the defendant on the clause in the lease were correct, this case should be reversed.

However, going further and taking up the question of the construction of the "repair" clause of the lease, as we have already stated, the defendant's contention is that this clause only imposes upon it the obligation to pay for the repairs to the walls and roof after they are made. The plaintiffs' contention, of course, is that this clause imposes upon the defendant not only the obligation to pay for the repairs to the walls and roof, but to make the repairs. At common law, in the absence of agreement between the lessor and the lessee, there is no duty upon the part of the lessor to make repairs. Lavery v. Brigance et al., 122 Okla. 31, 242 P. 239. Therefore, the liability, if any, of the defendant to make the repairs as well as to pay for them must be determined from an examination of the section of the contract involved. An examination of this provision discloses that the lessees' (plaintiffs') obligation to make all repairs and replacements that are necessary for their occupancy of the premises is followed by a restrictive clause, to wit: "Covering the theatre equipment, furnishings, plumbing, electrical work and painting." That this is a restrictive clause is true by virtue of grammatical construction and by the rules of construction prescribed by this court, since there is no comma between the general clause and the restrictive clause. St. Louis-San Francisco Railway Co. v. Bengal Lumber Co., 145 Okla. 124, 292 P. 52. In this connection, it should be noted that the following clause, to wit: "Provided that any repairs necessary to the roof or the walls of the building shall be borne by the lessor" (defendant) is not a restrictive adjunct or clause to the general clause providing for the making of repairs by the lessees, for the reason that it is preceded by a comma separating it from the general clause. For

these reasons, the question of the obligation of the lessor's liability to make the repairs, as well as to pay for them, narrows itself down to a construction of the last clause of the paragraph on "repairs," and in particular to the meaning of the word "borne." If the word "borne," as used, simply means to pay the expenses, then the position of the lessor (defendant) is correct as to the construction of that clause. If, however, the word "borne," as was used, means "to make," then the position of the plaintiffs as to the construction of this clause is the right one.

An examination of Webster's New International Dictionary shows that the word "bear," of which "borne" is the past participle, has a number of meanings. Some of the definitions are as follows: (1) To support; (2) to render, or give; (3) to manage, or direct, or to conduct; (4) to carry on, or maintain; (5) to sustain, or to be answerable for, and (6) to defray.

Substituting any of the definitions of the word "bear," or its past participle, "borne," in the clause in question, does not help a great deal. The use of any one of the following definitions, "to manage," "to carry on," or "to support" would indicate that it was the intention of the parties that the lessor make the repairs. On the other hand, the use of the definition "to defray," which means "to pay," or "discharge," would indicate that the lessor was to only pay for the repairs when made by the lessee. The truth is that the word "borne," as used in this contract, was an inapt word to express whatever the intention of the parties was, and that the phrase is an ambiguous one. It is a well-settled rule of law that where a provision in a lease contract is ambiguous, and where there is no evidence to the contrary as to the intention of the parties, it should be construed against the lessors and in favor of the lessees. Salzer v. Manfredi (Wash.) 195 P. 1046; Peirce et al. v. New York Dock Co., 265 Fed. 148; Goldberg v. Pearl (Ill.) 138 N. E. 141; Madison Avenue Realty Co., Inc., v. Martin, 187 N. Y. S. 318, and Williams v. Notopo'os (Pa.) 103 Atl. 290. Therefore, on the demurrer to the amended petition the trial court should have construed the meaning of the word "borne" against the lessor and in favor of the lessees, in view of the allegations in the amended petition that the contract placed upon the defendant lessor the obligation to repair the walls and the roof.

Of course: "The paramount rule in the

interpretation of contracts is to ascertain the intention of the parties and give effect to the same, if it can be done consistently with legal principles. Where words employed to express a particular condition in a contract in writing are ambiguous and cannot be satisfactorily explained by reference to other portions thereof, it is not error to admit parol evidence to show the meaning intended by the parties as to the use of the words employed." Barricklow et al. v. Boice et al., 50 Okla. 260, 150 P. 1094; Woods et al. v. Davis, 155 Okla. 6, 7 P. (2d) 905.

Therefore, if the defendant, subsequent to this ruling, files an answer in this case denying the interpretation of the word "borne" in the "repair" clause of the contract alleged by the plaintiffs, and alleges that the intention of the parties was otherwise as to the meaning of the word "borne," on a trial of this case, parol evidence would be competent to show the true intention of the parties.

Defendant, as an additional reason in support of the sustaining of the demurrer by the trial court in this action, contends that because the amended petition alleges the plaintiffs abandoned and surrendered the premises to the defendant when they became untenantable, the plaintiffs have no cause of action, because they surrendered the leased premises to the lessor. With this we cannot agree. It has been repeatedly held by this court that a surrender of the premises is necessary before an action for constructive eviction may be maintained. Key v. Swanson, 113 Okla. 287, 241 P. 490; Baptist General Convention et al. v. Wright et al., 136 Okla. 150, 276 P. 777.

As final grounds that the amended petition in this case states no cause of action, the defendant contends that the rights of the plaintiffs herein, even if there has been a breach by the defendant, are determined by section 10927, O. S. 1931, which provides:

"If within a reasonable time after notice to the lessor of dilapidations which he ought to repair, he neglects to do so, the lessee may repair the same himself, and deduct the expense of such repairs from the rent or otherwise recover it from the lessor; or the lessee may vacate the premises, in which case he shall be discharged from further payment of rent, or performance of other conditions."

This section, however, must be construed with section 10926, which limits it to buildings intended for the occupation of human beings. To dispose of this contention, it is only necessary to quote from the case of Barker v. Findley, decided by this court, in which a similar contention was raised. The court, in referring to those sections, said:

"It has been expressly held by this court that said sections of the statute have no reference or application to business buildings; and that there has been no modification of the common-law rule governing the rights of landlord and tenant with reference to repairing buildings used for business purposes." Barker v. Findley, 136 Okla. 55, 275 P. 1054; see, also, Gordon v. Reinheimer, 167 Okla. 343, 29 P. (2d) 596.

This case is reversed, with orders for the trial court to overrule the demurrer to the amended petition and allow the defendant to answer.

The Supreme Court acknowledges the aid of District Judge Bradford J. Williams in the preparation of this opinion. After the analysis of the law and facts was prepared by Judge Williams, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, WELCH, and CORN, JJ., concur.