**Joe FROBESE, Temporary Administrator of the Estate of Leola Melady, Deceased, et al., Appellants,**

v.

**R. J. ANDERSON, Appellee.**

No. 8107.

Court of Civil Appeals of Texas, Texarkana.

Nov. 7, 1972.

Rehearing Denied Dec. 12, 1972.

Patrick McGowan, Strasburger, Price, Kelton, Martin & Unis, Dallas, Ben Z. Grant, Kirkpatrick, Grant, Dennis & Baxter, Marshall, for appellants.

Earl Sharp, Sharp, Ward & Ross, Longview, for appellee.

CHADICK, Chief Justice.

This suit (to recover damages for the breach of a contract to sell land) was sev-

ered in the trial court from a multi-claim suit for damages. R. J. Anderson, the purchaser under the terms of an alleged sales contract, instituted the original suit as plaintiff. Defendants originally named were Archie Melady, Ed Melady, individually and as independent executor of the estate of Leola Melady, deceased, and Joe Frobese, temporary administrator of the estate of Leola Melady, deceased. After severance, R. J. Anderson continued as plaintiff in this action and Joe Frobese in his representative capacity remained as sole defendant. Prior to trial herein Archie Melady, Ed Melady, individually and in the representative capacity heretofore mentioned, were permitted to intervene. Other parties not identified by name in the final judgment were permitted to participate in the trial, though no formal written pleadings were filed in their behalf.

The judgment entered in the trial court awarded R. J. Anderson a recovery of $21,370.00 from Joe Frobese in his representative capacity; and dismissed the intervention of parties theretofore permitted to intervene. Frobese in his representative capacity has appealed from the judgment of the trial court and counsel has briefed thirteen points of error; counsel for Archie Melady and Ed Melady, individually and in his representative capacity, have adopted the Frobese brief; (mention hereafter of Frobese as a party should be understood as reference to him in his representative capacity). The legal issues presented by most of the points are settled and no fresh insight or novel application would be unveiled by a discussion. Under authority and in the spirit of Texas Rules of Civil Procedure 452 a discussion of the merits of all points of error except No. 12 will be omitted.

The twelfth point of error is in this language, to-wit:

"The trial court erred in admitting the testimony of the Plaintiff R. J. Anderson regarding his transactions and dealings with Leola Melady, Deceased, in view of the Dead Man's Statute, Article 3716."

R. J. Anderson's trial petition pled an action for breach of contract and prayed for general, as well as for special or consequential damage. Anderson alleged Mrs. Leola Melady, a widow, entered into a contract obligating her to sell him a 473-acre tract of land in Harrison County; and that Mrs. Melady breached the contract by refusing to consummate the deal. Shortly afterward she died. With reference to special damages, it was alleged that Mrs. Melady knew that Anderson was employed at an annual salary of $35,295.00, and was eligible to continue in his employment for at least ten years at that or a larger salary; but that at the suggestion of Mrs. Melady, Anderson took early retirement from his salaried position in order to take over personal management of the contract land. It was alleged that Mrs. Melady knew that his retirement income would be less than his salary, and that as a result of the breach of the contract Anderson suffered special damages of $159,950.-00.

To support an element of his action for special damages Anderson had the burden of proving that it was within the contemplation of the parties at the time the sales contract was formed that Anderson, in expectation that the contract would be executed according to its terms, would retire from his employment and give his time to the use and development of the contract land. On this phase of the proof the statement of fact shows that while Anderson was being interrogated by his counsel the following occurred, to-wit:

"Q. Now, then, one other question here, since he has gone into some of those things—

After you retired, came back to Marshall on April 1st, and prior to July 1st, 1970, you had conversations I am sure with—you have testified to conversations with Miss Leola?

A. Yes, sir.

Q. And during those particular times, she knew or you had talked with her about your retiring?

A. Yes, sir.

Q. And you had made her fully aware that you were retiring and coming back—

MR. GRANT: Your Honor, may I interrupt just a minute—we still have our running objection of yesterday on this—

THE COURT: Under the dead man rule—

MR. GRANT: To this line of testimony, yes, sir.

MR. GOODWIN: Further object as leading, your Honor.

MR. SHARP: All right, I will rephrase it.

Q. Did you all have any conversation relative to your retirement?

A. Quite often.

Q. And, were those conversations had prior to July 1, 1970?

A. Yes, sir."

The text of Tex.Rev.Civ.Stat.Anno. art. 3716, commonly called the Dead Man's Statute, is as follows:

"In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

Mrs. Leola Melady died before suit was instituted. The quoted testimony shows that Anderson was permitted to testify that in conversations with Mrs. Melady some time prior to July 1, 1970, he often discussed his projected retirement with her. This evidence was material to his action for special damages and is the only evidence in the record tending to show that his retirement was within the contemplation of the parties at the time he and Mrs. Melady entered into the sales contract.[1] Counsel for Anderson undertakes to avoid the disqualifications of witnesses and the prohibitions of Article 3716 on several grounds. These contentions will be discussed in the order presented.

1.

*The evidence was admitted
without objection.*

It is argued that counsel for Frobese did not object to the admission of the evidence quoted. A fair appraisal of the record will not sustain this contention. The judge held a session in chambers in an effort to clarify the status of counsel. The record indicates that announcement of appearances had previously been made at the beginning of the trial but at the in chambers hearing appearances of legal counsel on behalf of parties were reestablished by explicit statement from counsel. It was settled that Hon. Earl Sharp represented the plaintiff, R. J. Anderson; that the Hon. W. N. Dorsett represented the defendant, Joe Frobese, temporary administrator of the estate of Leola Melady, deceased; that the Hon. Ben Z. Grant represented the intervenors, Archie Melady and Ed Melady, individually, and in his representative capacity, and that the Hon. Joe B. Goodwin represented the estate of Leola Melady, deceased, and Archie Melady.

At the in chambers session, Mr. Goodwin stated that he asked Mr. Dorsett's permis-

1. The absence or insufficiency of the evidence was not assigned as error in the mo-

tion for new trial, nor brought forward for review by points of error.

sion to be associated with him in representing the estate, and that Mr. Dorsett granted such permission. Mr. Goodwin stated that he was not employed by Joe Frobese, nor was he being paid a fee for such representation. Mr. Dorsett confirmed this arrangement by stating that he would reiterate that he had no objections to any assistance, that he welcomed it. Joe Frobese, if present, remained silent. Representation of the parties as set out above is further confirmed by the appearances listed in the statement of facts. That document bears the written approval of the trial judge and counsel for all parties. No objection was made to Mr. Goodwin's appearances in behalf of the temporary administrator at this or any other time. Goodwin made it clear from the start of trial that he was acting in behalf of the interest Frobese represented. The permission implied from the silence and indulgence of the trial judge and opposing counsel, the express permission of Frobese's acknowledged counsel, and the silence and indulgence of Frobese, combine to compel a conclusion that Goodwin did in fact represent Frobese, and that Goodwin's objections to testimony were made in Frobese's behalf.

Early in the trial Mr. Grant lodged an objection to testimony on the grounds that it violated the prohibition of Article 3716. In the course of ruling upon the objection the trial judge entered into an understanding with Mr. Grant that he might have a "running objection" to testimony on the grounds that it violated the rule of Article 3716. This agreement, partly expressed and partly implied, arranged that without further objection, for the purpose of the trial record, any testimony admitted that tended to show a transaction with or statement by the deceased would be considered as admitted over the objection of Mr. Grant on the ground that it was a violation of the mentioned article. Later action of the trial judge indicates that this arrangement for a "running objection" was intended for the benefit of all parties in the position of a defendant. On at least three occasions Mr. Goodwin was assured by the trial judge that he had a "running objection" to the admission of testimony tending to show transactions or statements that violated or tended to violate the statute. One such assurance came shortly after the arrangement was first established. This laudable effort by the trial judge to expedite the trial shifted the responsibility of policing the testimony in this regard from the defendant to the judge, and required the plaintiff to proceed with extreme caution. However, Anderson's counsel voiced no objection to the arrangement and an unintended deadfall was set. No notation can be found in the statement of facts where Mr. Dorsett objected to testimony on the grounds that it violated the statute. This absence is in harmony with a conclusion that he understood the "running objection" to relieve him of making objections; though it is also possible that he simply saw no need to object. Nevertheless, the record clearly will not support the contention that the evidence quoted was admitted without objection in behalf of Frobese.

2.

*The same evidence came from another witness not disqualified by Article 3716.*

The evidence alluded to is that of Mr. Paul Anderson, a lawyer. This witness' testimony was not challenged as violating Article 3716. He testified as follows, to-wit:

"Q. Was anything else said during that particular time?

A. She wanted me to get word to Bob her regrets, that she was sorry that she had to do what she did. She knew that he had looked forward to buying this place, moving here, she regretted it very much and wanted me to convey that to him, and said she would like to write a letter explaining that to him.

Q. Now, then, Mr. Anderson, did she say anthing to you about the fact that she knew how this was dis-

commoding Bob Anderson or putting him out because of his retirement?

A. Yes, she did. She said she felt real bad about it."

This evidence mentions R. J. Anderson's retirement but does not prove or tend to prove that his retirement was within the contemplation of Mrs. Melady or of the parties at the time they agreed to the contract. This evidence refers to statements made after the contract was breached. The evidence is not addressed to the same issue and does not tend to prove the same fact as that in question here.

### 3.

*Mr. Goodwin opened up the whole area of transactions with Leola Melady by his cross-examination of R. J. Anderson on matters not previously touched upon in direct examination.*

On reference to the statement of facts, Mr. Goodwin's cross-examination is not found to have interrogated Anderson about a single transaction with or statement by Mrs. Melady. The record simply does not sustain the appellee's contention that Mr. Goodwin's cross-examination related to a statement by or transaction with the deceased or opened up the subject of retirement contemplated by the parties. It is manifest by the record that Mr. Grant did cross-examine Anderson about transactions with Mrs. Melady that had not been touched upon in the direct examination. But such cross-examination did not bear upon the issue of retirement here under consideration. Had it been otherwise, a waiver by Mr. Grant's cross-examination would only affect the parties he represented. Firestone v. Sims, 174 S.W.2d 279 (Tex.Civ.App. Fort Worth 1943, writ ref'd). The "running objection" preserved

the error for the appellant Frobese under the circumstances shown.

### 4.

### *Waiver by Pleading Non Est Factum*

Finally, it is argued that Frobese waived the Article 3716 disqualification of R. J. Anderson that prohibited Anderson from testifying to statements by and transactions with the deceased, Leola Melady, because Frobese denied under oath the execution of the instruments forming the written contract between Anderson and Mrs. Melady. Two cases, Olschewske v. Priester, 276 S.W. 647 (Opin. adpt. Tex.Com.App.1925) and Prichard v. Bickley, 175 S.W.2d 614 (Tex.Civ.App. Eastland 1943, no writ), are presented as authority for the proposition that such pleadings constitute waiver of the provisions of Article 3716 in its entirety; that the plea is a general waiver of the statutory disqualification and prohibition and permits Anderson to testify about any transaction with the deceased or any statement made by her. The cases do not support the contention. At most,[2] the cases would only permit proof by the otherwise disqualified witness of transactions or statements touching upon the execution of the instruments in question. Waiver of the statute as to one transaction or statement does not waive the prohibition as it applies to other and different transactions or statements. Dannenbauer v. Messerer's Estate, 4 S.W.2d 620 (Tex.Civ.App. Texarkana 1928, affirmed 120 Tex. 14, 35 S.W.2d 682, Comm.App.1931, opin, adpt.); Salvini v. Salvini, 2 S.W.2d 963 (Tex.Civ. App. El Paso 1928, writ dism'd); Himes v. Himes, 55 S.W.2d 181 (Tex.Civ.App. Fort Worth 1932, no writ); 1 McCormick & Ray, Texas Law of Evidence Sections 332 and 333.

Appellants' point of error No. 12 is sustained. Since the action for breach of contract is indivisible and the severance of

---

**2.** In this case, it is doubted that the pleadings opened the door to admission of a disqualified witness's testimony concerning execution of the instruments because it is immaterial to a decision, discussion of such aspect of the case is not necessary.

issues provision of Tex.R.Civ.P. 434 is not applicable, the judgment of the trial court is reversed and the case is remanded for new trial. The necessity of another trial makes it proper to suggest that Joe Frobese, temporary administrator of the estate of Leola Melady, deceased, under present pleadings, has the exclusive right to defend the action plead.

### On Motion for Rehearing

■ The disposition of this appeal ordered in the original opinion herein is countermanded and withdrawn. Imperfection in appellant Frobese's assignment of error in his motion for new trial in the trial court is apparent on inspection. The only assignment[3] of error germane to point of error No. 12 discussed in the original opinion is couched in such general terms that the assignment does not distinctly identify admission of the evidence quoted and discussed in the original opinion as the action of the trial court that is assigned as error. Appellee Anderson was permitted to testify regarding more than one transaction with and statement by the deceased and the assignment does not disclose or particularize the specific action of the trial judge that is questioned as erroneous. The form and content of an assignment of error in a motion for new trial is governed by Tex.R.Civ.P. 320, 321, 322, and 374. Assignment of error in a motion for new trial must, in the clear language of Rule 321, refer to and point out the action of the court that is complained of, "in such way as that the point of objection can be clearly identified and understood by the court." In short, the rules direct courts, trial and appellate, not to consider assignments couched in general terms, and to regard as waived grounds not distinctly set forth in the assignments of error in the motion for new trial. Wagner v. Foster, 161 Tex. 333, 341 S.W. 2d 887 (1960). Point of error No. 12 is

3. "II. The court erred in admitting testimony of R. J. Anderson in his dealings

not supported by a sufficient assignment of error, and the error discussed is waived.

The original opinion herein is withdrawn and this substituted for it. The judgment of the trial court is affirmed.

RAY, J., having formerly been of counsel in the case did not participate at any stage in its consideration.

### ON SECOND MOTION FOR REHEARING

■ Appellant's second motion for rehearing argues that the Melady-Anderson sale and purchase contract fails for want of mutuality of assent because the contract "did not specify with respect to the interest payments exactly how the interest should be calculated and paid." The motion cites Botello v. Misener-Collins Company, Ltd., 469 S.W.2d 793 (Tex.Sup.1971) and Bryant v. Clark, 163 Tex. 596, 358 S.W.2d 614 (1962) as supporting the proposition urged. And of course it is well settled that one attribute of a binding contract is that the minds of the parties thereto must meet with respect to both the subject matter of the agreement and all of its essential terms. 13 Tex.Jur.2d Contracts Sec. 13. The circuity of the route to a solution of the difficult question presented justifies additional discussion.

■ The amount of interest on the unpaid balance of the consideration and the time for payment thereof must be found, if it may be found at all, in the language and implications to be drawn from this excerpt of the letter in which Mrs. Melady offered to sell to Anderson, to-wit:

"If you are still interested in the place, which consists of the home and 473 acres, I propose to sell same to you as follows:

1. Total selling price is $110,000.00; payable 29% down (which is $31,900.00)

with Leola Melady, deceased, because of the Dead Man's Statute, Art. 3716."

2. The balance of $78,100.00 payable $10,000.00 per year, bearing interest at the rate of 5% per annum.

"If you are interested in the above proposition, please let me know within thirty days from date of my letter, otherwise this offer will expire."

Item 2 in the first clause states the amount of the balance of the consideration after down payment, and that such balance is to be liquidated at the rate of $10,000.00 per year. This clause considered in conjunction with the last sentence quoted impliedly proposes that annual payments begin one year after Dr. Anderson accepts the offer.

The second clause of item 2, obviously and grammatically, refers to the unpaid balance and the annual installments required to pay it. Clearly, the unpaid balance is to bear interest at the rate of 5% per annum. Solution of the problem presented turns upon the meaning of the words *bearing* and per annum in the context in which they are used. It is said in Teeter v. Mid-West Enterprise Co., 174 Okl. 644, 52 P.2d 810 (1935) that the word *bear* has a number of meanings and lists some of them. Among meanings listed are, *to support, to render,* or *give, to manage,* or *direct,* or *to conduct, to carry on,* or *maintain, to sustain,* or *to be answerable for,* and to *defray*. Standard dictionaries bear out the Oklahoma Court statement that the word *bear* has many meanings. The word, *bearing,* in the context of Mrs. Melady's letter, and in common parlance, also means *giving forth, yielding up, producing,* or *paying. Per annum* in popular usage means *each year,* or *annually,* Thus, substituting these alternative meanings, it appears clear enough Mrs. Melady proposed that Dr. Anderson yield up or pay 5% interest annually on the balance of the unpaid consideration, beginning one year after acceptance of the offer.

■ When all the language of item 2 is considered together a certain degree of ambiguity results, but in accord with established canons of construction, doubt must be resolved against Mrs. Melady and her legal representative. 13 Tex.Jur.2d Sec. 121. Appellant's second motion for rehearing is overruled.