Virgil BETTS, Appellant,

v.

Arthur BETTS, Appellee.

No. 7528.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 18, 1965.

**674**

Potter, Gowdy & Kirk, Littlefield, for appellant.

Cowsert & Bybee, Hereford, for appellee.

CHAPMAN, Justice.

The subject matter of this case involves a contest of a will. Appellee, Arthur Betts, filed an application to probate the alleged last will and testament of his father, W. P. Betts, deceased, in the County Court of Deaf Smith County. His half-brother, appellant, Virgil Betts, another son of the deceased, filed the contest. The County Court admitted the will to probate and appointed appellee independent executor without bond, as the will provided.

Appellant appealed the case to the District Court. Appellee filed a motion for summary judgment, with supporting affidavits. Appellant filed an answer to the motion, with opposing affidavits. Following a hearing on the motion, the trial court granted Arthur Betts' motion for summary judgment, admitted the will to pro-

bate and appointed appellee independent executor, as provided for in the will. Appeal is perfected from such judgment upon two points of error. The first point asserts error of the trial court in * * * "holding that contestant's evidence did not raise a material issue of fact as to whether or not the will sought to be probated had been revoked."

The contentions that the record raises a material issue of fact are based on the opposing affidavits of La Noe Kinkler and C. W. Dodson and wife, Emma Dodson. The objections to the merits of the opposing affidavits have their bases in Section (e) of Rule 166–A, Vernon's Ann.Tex. Rules of Civil Procedure, where it is stated:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Mrs. Kinkler is the full sister to the contestant and the half-sister to the proponent. Before making the affidavit, she had specifically disclaimed all interests she might have been entitled to in the estate of her deceased father, her deceased mother and her deceased step-mother.

Her affidavit stated her father told her in 1939 he had willed * * * "the Shallowater place to contestant in consideration of his working it nine years without pay and that he would not revoke the will; that in January 1963 he told her he had revoked contestant's will because Virgil had refused to divorce his wife; and that in July 1963 he told her he had made a new will giving all his property to a sixteen-year old girl in Hereford and asked her what she would think if he married a girl of that age."

No contention is made on appeal that any purported will made to Virgil should have been probated but only that the state-

ment in the affidavit to the effect that testator had made a will leaving all his property to an unidentified sixteen-year old girl in Hereford he had given some consideration to marrying raised a fact issue as to whether the will which was probated had been revoked.

The will probated was dated the seventeenth day of June, 1963. The testator died on May 22, 1964, at the age of eighty-five. Supporting affidavits establish that the probated will was found in the deposit box of the deceased testator, W. P. Betts, in the First National Bank of Hereford following his death. There is no question raised as to the will having been signed, declared and published with all the solemnities required by law and no question is raised in the record as to the testamentary capacity of the deceased at the time the will was signed, declared and published.

■ We hold the naked statement in the affidavit of Mrs. Kinkler to the effect her father told her in July 1963 that he had made a new will giving all his property to an unidentified sixteen-year old girl in Hereford, unsupported by any other proof of revocation of the probated will constitutes no probative evidence of revocation.

Such affidavit does not make any statement showing personal knowledge on the part of the affiant of the existence of a will made subsequent to the probated will, nor is there any statement from which such inference could have been drawn such as to bring the affidavit within the requirement of Section (e) of Rule 166–A, V.A. T.R. The affidavit only shows personal knowledge of a legal conclusion of an eighty-four year old man that he had made a will leaving all his property to an unidentified sixteen-year old girl. The record is completely silent as to any such will having been made under the solemnities required by law for a will and the alleged statement of the deceased is simply a statement of a legal conclusion as distinguished

from a statement of facts from which that conclusion should be deduced.

■ " 'An affidavit based on hearsay and statements contained in affidavits that are but mere conclusions of law are insufficient to warrant the overruling of a motion for summary judgment.' " Sparkman v. McWhirter, Tex.Civ.App., 263 S.W. 2d 832 (writ refused). Mere conclusions of law will not suffice. Gaines v. Hamman, 163 Tex. 618, 358 S.W.2d 557.

Our Supreme Court in McElroy v. Phink, 97 Tex. 147, 76 S.W. 753, 755, has said:

"When the declarations of an alleged testator consist, in effect, of the naked assertion that he has made a will, or that he has revoked one that is proved to have been executed, they are generally excluded; and we think such action is proper, for the reason that such declarations are merely statements of a legal conclusion and not a statement of the facts from which that conclusion should be deduced."

In holding to the same effect the San Antonio Court of Civil Appeals in Sien v. Beitel, 289 S.W. 1057, 1059 (N.W.H.) considered the admissibility of a statement of a witness to the effect that she had conversations with the deceased in which he stated he * * * " 'had made a later will and had remembered my mother in the will.' " The court said:

"Such testimony was wholly incompetent for any purpose here. No satisfactory evidence had been offered to show the existence of any such will or the terms thereof, and no such general statement of declarations of a deceased person can be shown for the purpose of proving that the necessary requirements of so solemn an instrument as a will not accounted for, which the law so carefully required to be done under its formalities in its execution and then to be revoked only in the manner prescribed by the same law. Article 8285, R.S. 1925. It is not

permissible to accomplish that purpose by the testimony of witnesses as to the naked declarations of the testator, unsupported, that he [had] made another will or revoked a particular will. Such statements would merely be statements of conclusions, without a statement of facts upon which such conclusions are based."

In considering another will contest the Texarkana Court of Civil Appeals in Covington v. McDonald, Tex.Civ.App., 307 S. W.2d 335, has said:

"There was no testimony in the record of any one ever having seen a written revocation of the will in question—no written revocation was offered in evidence nor were the contents of any allegedly lost written revocation ever testified about or offered in evidence or shown to have been executed with the formalities prescribed by law. Nor was any subsequent will produced or offered in evidence. There is no evidence of probative force in the record that the will in question was ever revoked by any of the methods outlined in Section 63 of the Probate Code, supra."

■ It is true that the burden of establishing that a will has not been revoked is placed upon the proponent of the will sought to be probated. Brackenridge v. Roberts, 114 Tex. 418, 270 S.W. 1001.

■ We have held that Mrs. Kinkler's affidavit of a legal conclusion made by her father constituted no probative evidence of revocation. Therefore:

"The will having been established as having been duly executed by the testator, and having been produced, unattended by any circumstances which cast suspicion upon it, the presumption of the continuity of the status applies, and

makes a prima facie case as against a revocation." McElroy v. Phink, supra.

By brief, appellant admits " * * * we can presume that the later will was destroyed [1] by the testator as it was not found among his papers. * * *."

The cases cited by contestant are not analogous under the facts to the instant case. We, therefore, hold that the record shows a discharge of the burden required of proponent in probating the will, part of which was that the will probated had never been revoked.

In his second point contestant asserts error of the court in appointing Arthur Betts independent executor without bond because * * * "By so doing, the Contestant was deprived of his right to have the matter submitted to a jury as to whether or not Arthur Betts was indebted to the estate, as alleged in the above quoted affidavit, and that the evidence of the Contestant raised a material issue of fact in this cause."

■ Section 78 of the Texas Probate Code, V.T.C.S., sets out seven disqualifications for serving as an executor or an administrator of an estate. The only ones that could be applicable in disqualifying Arthur Betts are Subsections (d) and (g) of Section 78. He is a nonresident of Texas but the record shows he has appointed a resident agent to accept service of process in all actions or proceedings with respect to the estate, and caused appointment to be filed with the court as stated in Section 78(d) of the Texas Probate Code in order to negative the non-resident disqualification. He is therefore not disqualified under that section. This leaves only Section 78(g) for consideration.

The affidavits of Mr. and Mrs. Dodson state they heard the deceased testator say in the early part of 1964 that he had loaned

---

1. This is the will in which Mrs. Kinkler's affidavit affirms ⁕ * * "my father told me that he had made a new will giving all his property to a sixteen (16)

year old girl in Hereford, and asked me what I would think about it if he married a girl that age."

Arthur Betts $15,000 to help him make a payment on a farm in the Panhandle of Oklahoma and that they know he now denies such transaction was a loan, but insists it was a gift. Mrs. Kinkler's affidavit states her father told her he loaned Arthur Betts $10,000 to help him make a down payment on a farm in the Panhandle of Oklahoma, and that Arthur denies the transaction was a loan but insists it was a gift.

■ Before the Texas Probate Code became effective the courts had recognized a broad discretion on the part of a testator in naming an independent executor. If he was of sound mind and twenty-one years of age, he was entitled to letters testamentary. Journeay v. Shook, 105 Tex. 551, 152 S.W. 809. The question then presents itself as to whether the enactment of Section 78(g) permits the court to disqualify a named independent executor for the sole reason that such person has an interest in the estate. No such intention is expressed or implied in the Probate Code. Boyles v. Gresham, 158 Tex. 158, 309 S.W.2d 50. We therefore hold, as a matter of law, that an independent executor named in a will is not unsuitable simply by virtue of his claim "as a beneficiary * * * under the will." Boyles v. Gresham, supra. This fact is particularly applicable in this case for the reason that Arthur Betts is the sole and only devisee under the will of his father, which bequeaths * * * "all of my property, real, personal, and mixed, including all money that I may have at the time of my death, to be his in absolute title, to manage, sell or dispose of as he may determine best."

Therefore, if appellee owes any money to the estate, he owes it to himself, subject to the rights of creditors. Contestant is not a creditor and has no interest under the will. It follows that no fact issue was raised by the record and that the court properly awarded a summary judgment to the effect that the will was entitled to probate and that Arthur Betts was entitled to appointment as independent executor of said will in accordance with its provisions.