

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00356-CV

———————————————

IN THE ESTATE OF WYNELL N. KLUTTS, DECEASED

On Appeal from the County Court
Hood County, Texas
Trial Court No. P08257

Before Sudderth, C.J.; Gabriel and Wallach, JJ.
Concurring and Dissenting Memorandum Opinion by Justice Wallach

**CONCURRING AND DISSENTING MEMORANDUM OPINION**

I concur in the judgment and reasoning of the majority opinion regarding the reversal of the trial court's judgment on the claim of undue influence. For the reasons set forth below, I respectfully dissent from the majority opinion reversing the trial court's judgment finding testamentary capacity for the 2008 Will. I would affirm the trial court's judgment that Michael proved that the 2008 Will was executed with the requisite formalities, that Wynell had testamentary capacity at the time of the 2008 Will's execution, and that the 2008 Will revoked the 2007 Will.[1]

**I.     Mike proved as a matter of law that the 2008 Will was executed with the requisite formalities, that Wynell had testamentary capacity at the time of its execution, and that the 2008 Will revoked the 2007 Will.**

**A.     The Requisite Formalities**

With respect to proving the execution of the 2008 Will according to the requisite formalities, Mike introduced a copy of the 2008 Will, authenticated by the affidavits of will drafter Donald Barley and his wife and will witness Sandra, and also introduced the deposition testimony of those individuals and of will witness Marti Luttrall and notary public Linda Soloman. The copy of the 2008 Will contains an affidavit that meets the requirements for a self-proved will under the Texas Estates Code. *See* Tex. Est. Code Ann. §§ 251.101–.105. Other than the contest over whether Wynell had testamentary capacity on the date of execution, there is no

---

[1]The parties are identified by the same names as in the majority opinion.

contest about the copy of the will being forged, fraudulent, incomplete, or altered. Under these circumstances, the validity of the 2008 Will with respect to the formalities of its execution, other than testamentary capacity, is uncontroverted. *See In re Estate of Jones*, 197 S.W.3d 894, 900–01 (Tex. App.—Beaumont 2006, pet. denied).

## B.     Revocation of Prior Wills

The 2008 Will expressly revoked all previous wills.

## C.     Testamentary Capacity

The core dispute centers on whether Wynell's testamentary capacity was established as a matter of law as related to the 2008 Will.

### 1.     Applicable Law

An applicant for the probate of a will must prove, among other facts, that the testatrix had testamentary capacity at the time of the will's execution and that the testatrix did not revoke the will. Tex. Est. Code Ann. § 256.152; *Ashley v. Usher*, 384 S.W.2d 696, 698 (Tex. 1964) (construing predecessor to estates code section 256.152 and stating that "the burden of establishing that a will has not been revoked is placed by this statute on the proponent of the will sought to be probated"). A written will may be revoked by "a subsequent will, codicil, or declaration in writing that is executed with like formalities." Tex. Est. Code Ann. § 253.002. On the other hand, a party seeking revocation by a subsequent will must prove "that the subsequent instrument was executed at a time when the [maker] was of sound mind and disposing

memory." *Harkins v. Crews*, 907 S.W.2d 51, 58 (Tex. App.—San Antonio 1995, writ denied).

Therefore, it was Michael's burden to prove as a matter of law (1) that Wynell had testamentary capacity on July 24, 2008—the date she signed the 2008 Will, (2) that the will was executed with the requisite formalities, and (3) that the will revoked all prior wills. *See* Tex. Est. Code Ann. § 256.152; *Harkins*, 907 S.W.2d at 58. Additionally, because Paula and Donna had moved to have the 2007 Will admitted to probate, they had the burden to prove that Wynell had not revoked the 2007 Will. *See* Tex. Est. Code Ann. § 256.152; *Estate of Luce*, No. 02-17-00097-CV, 2018 WL 5993577, at *2 (Tex. App.—Fort Worth Nov. 15, 2018, no pet.) (mem. op.); *Just v. Denson*, No. 14-87-00542-CV, 1988 WL 83830, at *3 (Tex. App.—Houston [14th Dist.] Aug. 11, 1988, writ denied) (not designated for publication); *Betts v. Betts*, 395 S.W.2d 673, 676 (Tex. App.—Amarillo 1965, no writ). In Jan, Donna, and Paula's probate application, they pleaded for a judgment setting aside the 2008 Will and the 2010 Will on the bases that Wynell lacked testamentary capacity when she signed them.

Michael sought traditional summary judgment asking the trial court to deny the 2007 Will's admission to probate because the 2008 Will revoked the 2007 Will. He therefore had to prove as a matter of law that Wynell had testamentary capacity at the time she executed the 2008 Will, and meeting this burden would negate as a matter of law Jan, Paula, and Donna's lack-of-capacity claim. *See IHS Cedars Treatment Ctr. of*

4

*DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

The proper means of analyzing whether Wynell had testamentary capacity on July 24, 2008 was summarized by this court in *Horton v. Horton*, 965 S.W.2d 78, 85–86 (Tex. App.—Fort Worth 1998, no pet.):

> In a will contest case, the proper inquiry is whether the testator had testamentary capacity on the day the will was executed. *See Lee* [*v. Lee*], 424 S.W.2d [609,] at 611 [(Tex. 1968)]. Although this is the ultimate question, the court may also look to the testator's state of mind at other times if these times tend to show his state of mind on the day the will was executed. *See id.*; *Chambers v. Chambers,* 542 S.W.2d 901, 907 (Tex. App.—Dallas 1976, no writ). Such evidence may be considered only if it demonstrates that a condition affecting the individual's testamentary capacity was persistent and likely present at the time the will was executed. *See Croucher v. Croucher,* 660 S.W.2d 55, 57 (Tex. 1983). Thus, to successfully challenge a testator's mental capacity with circumstantial evidence from time periods other than the day on which the will was executed, the will contestants must first establish that the evidence offered indicates a lack of testamentary capacity. *See id.* In addition, they must also demonstrate that the evidence is probative of the testator's capacity (or lack thereof) on the day the will was executed. *See id.* Furthermore, the evidence provided by the will contestants must be of a satisfactory and convincing character, and probate will not be set aside on the basis of evidence that creates only a suspicion of mental incapacity. *See Lee v. Lee,* 413 S.W.2d 931, 934 (Tex. Civ. App.—Fort Worth 1967), *aff'd in part, rev'd on other grounds in part,* 424 S.W.2d 609 (Tex. 1968).
>
> In the present case, there is no direct evidence that [the testator] lacked testamentary capacity on the day the will was executed. Nevertheless, Appellees contend that they conclusively established this fact through circumstantial evidence from days other than December 30, 1993. Specifically, they refer to the testimony at trial that tended to show that [the testator] was extremely ill on December 24, 1993, that the cancer had spread to his brain, that he was taking medication to control his pain, and that he hallucinated or was disoriented at times.

5

Evidence of physical infirmities, without more, does not tend to prove that a testator is incapable of knowing his family or his property, or understanding the effect of signing the will. The fact that a testator consumed pain medication on the day he executed the will in question is likewise insufficient to prove a lack of testamentary capacity, without some evidence that the medication rendered the testator incapable of knowing his family, his estate, or understanding the effect of his actions. In this case, Appellees offered no evidence that [the testator]'s pain medication or physical problems impaired his testamentary capacity. As a result, the only evidence in this case that could possibly support the jury's finding that [the testator] lacked testamentary capacity is the testimony that [the testator] was hallucinating and disoriented at times.

As stated above, it is not enough to show that a testator lacked testamentary capacity on some days without also showing that the condition probably persisted on the day the will was executed. *See Croucher,* 660 S.W.2d at 57.

### 2. Analysis

Michael contends that proof of execution of a self-proving will is prima facie proof of testamentary capacity and entitles him to summary judgment on that issue.

*In re Estate of Graham* is illustrative. 69 S.W.3d 598, 604–06 (Tex. App.—Corpus Christi 2001, no pet.). *Graham* involved a will contest over the admission of a copy of a will to probate. As noted by the court,

> [w]e first address the will contestants' claim that Mr. Graham's will was not executed with the "formalities and solemnities required by the Texas Probate Code." Section 59 of the Texas Probate Code sets forth the requisites of a will. It states that, except where otherwise provided by law, a will must be (1) in writing, (2) signed by the testator[,] and (3) be attested by two or more credible witnesses above the age of fourteen years who shall subscribe their names thereto in their own handwriting in the presence of the testator.

*Id.* at 603 (internal citations omitted). In *Graham*, the will proponents offered proof of the signing and witnessing of the self-proving will in compliance with the former Texas Probate Code through the affidavits of one of the witnesses and the notary to the will. *Id.* Because the will was authenticated through these affidavits and because the will met the requirements for a self-proving will, the proponents made a "prima facie" showing of the "validity of its execution." *Id.* at 605. However, despite a prima facie showing of the will's execution, the will proponent retained the burden of proof on the issue of testamentary capacity until the will was admitted to probate. *Id.* at 605–06.

In this case, Michael's proof included a copy of the 2008 Will (including a self-proving affidavit that met the requirements of Texas Probate Code section 59(a)–(c)) authenticated by the affidavits of Donald, the drafting attorney, and Sandra, a witness to the will. Thus, under *Graham*, Michael made a prima facie showing of the validity of the 2008 Will's execution. However, the 2008 Will was not admitted to probate, so Michael retained the burden of proof to establish Wynell's testamentary capacity on July 24, 2008.

Michael's evidence of Wynell's testamentary capacity on July 24, 2008, came from four lay witnesses—Donald, Sandra, Luttrall, and Soloman—each of whom had personal contact with Wynell on July 24, 2008.[2] They offered testimony that Wynell

---

[2]Over Appellants' objections, the trial court admitted the affidavit testimony of forensic psychiatrist Dr. Lisa Clayton, who concluded that Wynell had testamentary

was of sound mind, that she had the mental capacity necessary to execute her will and that she understood what she was doing and the changes that she was making. Donald had been Wynell's attorney and CPA for many years and had prepared previous legal and accounting documents for her and her deceased husband Fred over the years. Sandra considered herself a friend of Wynell's because she had previously had encounters with her in the law office as well as outside the law office. Appellants did not offer any direct evidence to contradict Wynell's capacity on July 24, 2018.

Appellants did attempt to cast aspersions on the credibility of Donald's testimony and that of his staff but offered no authority that such aspersions were sufficient to raise a fact issue to defeat a summary judgment. For example, they

---

capacity on July 24, 2008. She also concluded that Wynell's medical records did not reveal conditions or treatments that would have diminished her capacity. Dr. Clayton's affidavit did not attach copies of the records she reviewed. Appellants' objection to such failure should have been sustained because Rule 166a(f) requires that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Tex. R. Civ. P. 166a(f). While there is a dispute among the courts of appeals as to whether this failure is a defect in form or in substance, there is no question that it is a defect. *See DeLarosa v. Stokes*, No. 03-12-00125-CV, 2012 WL 3600874, at *6 (Tex. App.—Austin Aug. 17, 2012, no pet.) (mem. op.); *Lee v. Lee*, 43 S.W.3d 636, 640 (Tex. App.—Fort Worth 2001, no pet.) (holding that failure to attach documents was a defect in substance); *Gorrell v. Tex. Utils. Elec. Co.*, 915 S.W.2d 55, 60 (Tex. App.—Fort Worth 1995, writ denied); *cf. Martin v. Durden*, 965 S.W.2d 562, 565 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (holding that failure to attach documents was a defect in form). Further, affidavits that do not have such records attached will not support a summary judgment on appeal. *Nat. Gas Clearinghouse v. Midgard Energy Co.*, 23 S.W.3d 372, 379 (Tex. App.—Amarillo 1999, pet. denied); *Ceballos v. El Paso Health Care Sys.*, 881 S.W.2d 439, 444–45 (Tex. App.—El Paso 1994, writ denied). Therefore, such testimony is not considered for purposes of this discussion.

8

argued that Donald had difficulty recognizing Alzheimer's disease in his own mother and that maybe a jury would consider him not adept at detecting a lack of testamentary capacity in his client. Not only does this argument assume that Wynell had a lack of testamentary capacity to be observed on July 24, 2008, but there is also no evidence in the record that Wynell had any mental deficiencies on that date. Such aspersions should not create a fact issue for summary-judgment purposes. A solemn testament executed under the formalities required by law by one mentally capable of executing it should not be set aside upon a bare suspicion of wrongdoing. *Estate of Davis v. Cook*, 9 S.W.3d 288, 293 (Tex. App.—San Antonio 1999, no pet.); *Garza v. Garza*, 390 S.W.2d 45, 47 (Tex. App.—San Antonio 1965, writ ref'd n.r.e.); *see also In re Estate of Flores*, 76 S.W.3d 624, 629 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.).

In addition to Michael's direct evidence regarding Wynell's capacity on July 24, 2008, the circumstantial evidence properly before the trial court establishes the existence of Wynell's testamentary capacity on July 24, 2008. The uncontroverted evidence established that, prior to July 24, 2008, Wynell was actively serving as independent executrix of Fred's estate and working with her attorney Ron Adams to transfer assets worth approximately $1,600,000 to each of the four children. This plan was summarized in a letter from Adams to Donald in December 2007. These distributions and transfers totaled approximately $6,400,000 of Wynell's assets. The documents effectuating this plan, whether executed in her individual or fiduciary

9

capacity, demonstrate Wynell's detailed knowledge of her assets and the natural objects of her bounty and her ability to make and execute complex decisions concerning her estate. In this regard, it is worth noting that it takes less mental capacity to establish testamentary capacity than legal capacity to make contracts. *See Hamill v. Brashear*, 513 S.W.2d 602, 607 (Tex. App.—Amarillo 1974, writ ref'd n.r.e.). These documents reflect that the transfers continued at least through April 23, 2008. Appellants, as recipients of Wynell's generosity, have not claimed that she lacked capacity between December 2007 and April 23, 2008. To the contrary, it can be reasonably inferred only that Wynell's capacity to make complex decisions was recognized by her family and her lawyers. Furthermore, there is no evidence that was properly before the trial court that demonstrates any decline in Wynell's mental status between December 2007 and July 24, 2008.

Over Michael's proper hearsay objections, the trial court admitted several of Wynell's purported medical records, which Appellants contend raised fact issues regarding Wynell's testamentary capacity. Initially, the objections to these documents should have been sustained, so they were not properly before the trial court for consideration. *See In re Estate of Anderson*, Nos. 13-07-00112-CV, 13-07-00131-CV, 2008 WL 3894653, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 25, 2008, pet. denied) (mem. op.). However, assuming that these records were properly admitted, they do not meet the test established in *Horton*. *See* 965 S.W.2d at 85–86. There is no evidence that any of the conditions or medications referenced in the records had any

10

impact on her testamentary capacity at any time even remotely relevant to July 24, 2008, if at all. Any such conclusion would be nothing more than mere supposition or speculation.

Finally, Appellants point to attorney Adams's concerns that Michael was trying to interfere in Wynell's estate decisions in early July 2008 when he delivered to Adams a letter from Wynell, in which she stated that she wanted to disinherit two of her stepdaughters. Adams suggested that he send a copy of the proposed new will to Wynell to review before she came in to sign it in order to see if the new will reflected her intentions. This testimony does not raise a fact issue regarding testamentary capacity. If Adams had a concern about Wynell's capacity, one would not expect that he would insist on her reviewing the will for conformity with her intent because she would not have been legally competent to form an intent. Adams was, as her established attorney, actually soliciting her involvement in the decision-making process.

Given the direct evidence of Wynell's testamentary capacity on July 24, 2008, the lack of any evidence directly controverting her capacity on that date, the extensive evidence of capacity prior to and almost up to the date of the will, and no circumstantial evidence around the time of the execution of the will which would reasonably infer a problem with capacity on July 24, 2008, the granting of the summary judgment on testamentary capacity was proper. *See Pool v. Diana*, No. 03-08-00363-CV, 2010 WL 1170234, at *6–7 (Tex. App.—Austin Mar. 24, 2010, pet. denied)

11

(mem. op.); *Tomlinson v. Estate of Theis*, No. 03-07-00123-CV, 2008 WL 160202 at *2–3, *10–13 (Tex. App.—Austin Jan. 18, 2008, no pet.) (mem. op.).   Accordingly, I would overrule Appellants' third issue.

## II.    Conclusion

I concur in the majority opinion's disposition of the undue-influence issue. However, I would affirm the trial court's judgment that Michael proved that the 2008 Will was executed with the requisite formalities, that Wynell had testamentary capacity at the time of the 2008 Will's execution, and that the 2008 Will revoked the 2007 Will; because the majority holds otherwise on this issue, I respectfully dissent.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  December 19, 2019